644 S.E.2d 693

**The STATE, Respondent,**

v.

**Brandon TURNER, Appellant.**

**No. 26316.**

Supreme Court of South Carolina.

Heard March 20, 2007.
Decided April 23, 2007.

124

J. Falkner Wilkes, of Craven & Wilkes, of Greenville, for appellant.

Attorney General Henry Dargan McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Salley W. Elliott, Senior Assistant Attorney General, Harold M. Coombs, Jr., of Columbia; and Solicitor Robert M. Ariail, of Greenville, for respondent.

Justice MOORE.

Appellant was found guilty on charges of armed robbery and assault and battery of a high and aggravated nature (ABHAN). He was sentenced to fifteen years imprisonment for armed robbery and ten years imprisonment for ABHAN. The terms were to be served concurrently. His appeal was certified from the Court of Appeals.

Appellant was identified as the robber of a pizza delivery woman. On a sunny afternoon, the victim arrived at a house to deliver a pizza but no one answered the door. She heard the back door of the house slam so she went behind the house. She saw two black males coming towards her. The male walking in front, later identified as appellant, looked angry. The victim stated he came towards her and pulled a gun from behind his back and demanded money. The assailant pulled the victim by her shirt towards the back of the home. The victim told the assailant to take her money and he did so by pulling money out of her pocket. The victim was then told to lie down on the ground. While on the ground, the assailant held the gun beside her head. After a few moments, the assailant and the other male left. Based on the victim's identification of appellant as her assailant, appellant was found guilty of armed robbery and ABHAN.

## ISSUES

I. Did the court err by admitting identification testimony where the photographic line-up was unduly suggestive?

II. Did the court err by sending written charges to the jury?

III. Did the court err by limiting the cross-examination of the victim by not allowing questions regarding her schizophrenia diagnosis, her treatment, and her medications?

## DISCUSSION

### I. Identification

Prior to trial, a suppression hearing was held regarding the victim's pre-trial identification of appellant. The victim testified about how the crimes occurred and described her assailant by stating he was "fairly tall," "built pretty good," did not have a shirt on, and he "was dark." She stated she went to the law enforcement center the same day to look at pictures in a line-up. She stated Investigator Wes Smith did not instruct her she must choose someone and did not tell her that the person who attacked her was in the line-up. She stated he

told her to only choose someone if she was sure. She testified she chose appellant as her assailant.

Investigator Smith testified at the suppression hearing. He stated appellant voluntarily came in and had his photograph taken. Smith placed appellant's picture with five other pictures of similar-looking males and showed the pictures to the victim. Prior to presenting the pictures, Smith told the victim that the suspects may or may not be one of the people in the photographs and that he wanted her to look at the photographs and identify someone only if she was sure beyond a reasonable doubt. He stated she indicated she understood his instructions. The victim identified appellant after looking only momentarily at the pictures.

On cross-examination, Investigator Smith stated he pulled the other five pictures from his photographic database and that he tried to choose people that had a similarly shaped face with some facial hair because the assailant had some facial hair. He stated he did not pay attention to the contrast of the background but just tried to choose people who looked similar. He admitted that four pictures had purple backgrounds and two pictures had gray backgrounds. He stated he did not have any choice in the use of the gray background in appellant's picture.

Following the testimony, appellant objected that the photo line-up was suggestive in that only two of the persons in the line-up can be identified as dark-skinned due to the use of the light background. The court ruled that, while there were some differences in the photographs, there will always be differences. The court ruled the line-up was not unduly suggestive.

At trial, the victim testified regarding the photo line-up. Over appellant's objection, the photo line-up was admitted into evidence. Following that exchange, the victim then identified appellant as her assailant.

▉▉▉▉ Appellant argues the line-up was suggestive because, due to the different color background, appellant's picture stands out from all but one other picture.[1]

---

[1]. Appellant further argues that the fact the victim was shown the photo line-up two more times in court prior to her in-court identification of

 A criminal defendant may be deprived of due process of law by an identification procedure which is unnecessarily suggestive and conducive to irreparable mistaken identification. *State v. Traylor*, 360 S.C. 74, 600 S.E.2d 523 (2004).[2] An in-court identification of an accused is inadmissible if a suggestive out-of-court identification procedure created a very substantial likelihood of irreparable misidentification. *Id.*

 The United States Supreme Court has developed a two-prong inquiry to determine the admissibility of an out-of-court identification. *Id.* (citing *Neil v. Biggers*, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972)). A court must ascertain whether the identification process was unduly suggestive. *Id.* Even assuming an identification procedure is suggestive, it need not be excluded so long as, under all the circumstances, the identification was reliable notwithstanding the suggestiveness. *State v. Traylor, supra.* The inquiry must focus upon whether, under the totality of the circumstances, there was a substantial likelihood of irreparable misidentification. *Id.* The following factors should be considered in evaluating the totality of the circumstances to determine the likelihood of a misidentification: (1) the witness's opportunity to view the perpetrator at the time of the crime, (2) the witness's degree of attention, (3) the accuracy of the witness's prior description of the perpetrator, (4) the level of certainty demonstrated by the witness at the confrontation, and (5) the length of time between the crime and the confrontation. *Id.*

The photo line-up here is not unduly suggestive. Despite the variation in the background colors, appellant does not stand out in comparison with the other individuals in the line-up. All six men have facial hair and all appear to be "built," as described by the victim. The gray background does not make appellant's complexion seem darker than the complexions of the other four individuals who have purple back-

---

him multiplies the suggestive impact of the photo line-up. However, when the victim identified appellant as her assailant in the courtroom, he did not object. Therefore, appellant's argument regarding the in-court identification is not preserved for review. *See State v. Dunbar*, 356 S.C. 138, 587 S.E.2d 691 (2003) (issues not raised and ruled upon in the trial court will not be considered on appeal).

2. *Cert. denied*, 543 U.S. 1063, 125 S.Ct. 891, 160 L.Ed.2d 793 (2005).

grounds. Accordingly, the photo line-up is not unduly suggestive. *See, e.g., United States v. Lincoln,* 494 F.2d 833 (9th Cir.1974) (fact appellant's photo was in color and photos of the other individuals in the line-up were in black and white is not impermissibly suggestive); *Burgess v. State,* 827 So.2d 134 (Ala.Crim.App.1998), *aff'd,* 827 So.2d 193 (Ala.2000) (fact appellant was wearing a dark jacket or that he was standing before a blank wall while others were standing in front of a curtain did not render line-up unduly suggestive); *State v. Holmes,* 931 So.2d 1157 (La.App. 4th Cir.2006) (fact appellant's photo was placed in the top center position of a line-up and had a lighter background shade than the other photos did not render the line-up unduly suggestive); *State v. Gullett,* 633 S.W.2d 454 (Mo.App.1982) (fact appellant's photo was in color and was slightly larger than other photos, which were in black and white, did not render the line-up unduly suggestive).

Regardless of whether the photo line-up was suggestive, the identification was reliable. The victim had an ample opportunity to view her assailant at the time of the crime. The crime occurred outside during a sunny afternoon. The victim had a full facial view of him while he asked her questions. Her degree of attention was manifested by the description she gave police. Her description included the details that the assailant was tall, was built, was not wearing a shirt, was dark, and had some facial hair. This description she gave police matched the photograph she chose from the line-up. The victim had a high degree of certainty regarding her identification because she looked at the photographs only momentarily before identifying appellant. Finally, the time between the crime and the confrontation was very short as the line-up occurred on the same day as the crime. All of these factors point to the reliability of the victim's identification of appellant as her assailant. Even assuming the line-up was suggestive due to the different background colors, there is not a substantial likelihood of irreparable misidentification. Accordingly, the trial court properly admitted the identification.

## II. Submission of Written Charge to the Jury

At the conclusion of the court's charge to the jury, the court informed the jury they would receive a written copy of his charge in the jury room. Following the attorneys' review

of the charge, appellant objected. The court submitted the written charge to the jury without addressing appellant's objection. Appellant argues the trial court erred by sending the jury charge in written form to the jury.

A trial court may, in its discretion, submit its instructions on the law to the jury in writing. *Cf. Clark v. Cantrell*, 339 S.C. 369, 529 S.E.2d 528 (2000) (an appellate court will not reverse the trial court's decision regarding jury instructions unless the trial court abused its discretion); *see State v. McAvoy*, 331 N.C. 583, 417 S.E.2d 489 (1992) (trial court has inherent authority, in its discretion, to submit its instructions on the law to the jury in writing).

Further, appellant has not shown how he was prejudiced by the court's alleged error. *See State v. Douglas*, 369 S.C. 424, 632 S.E.2d 845 (2006) (appellate courts will not set aside convictions due to insubstantial errors not affecting the result). Although no error was made in the instant case, we remind the Bench that the submission of written instructions to the jury is not appropriate for every case. While the written submission of the jury instructions could aid a jury in properly applying the law to the facts before it, this practice should be carefully exercised by the Bench.

### III. Limitation of Cross-examination

Prior to trial, the State moved to preclude appellant from using the terms "schizophrenia" or referring to that particular diagnosis during appellant's cross-examination of the victim. Before determining whether the testimony should be limited, the court allowed an *in camera* cross-examination of the victim. The victim testified she has schizophrenia and that she takes Prozac and Risperdal for that condition. She stated that if she does not take her medication she becomes confused, hears voices, and has problems with her memory. However, she indicated she was taking her medication on the date of the crimes. The court asked her if she had been without her medicine either during the time of the crimes or anytime recently and the victim stated she had not.

The court found there would be very little that would assist the jury in evaluating her ability to recall what happened or her credibility. The court felt it would require speculation on the jury's part to connect the medical testimony to her ability to testify truthfully. The court stated there was a significant potential for unfair prejudice because it may cause the jury to decide the case on an improper basis.

Appellant then requested that he be allowed to ask the following questions: Do you take medication? What do you take? If you do not take your medication over a long period of time, what is your condition? The court stated that the identification of the medicines is prejudicial because it is medication that people associate with mental illness and that the naming of those medicines would not add any probative value. The court asked the questions *in camera* and concluded that questioning the victim regarding the names of her medicines should not be allowed under Rule 403, SCRE. The court then allowed the State to reopen its direct examination of the victim.

On direct, the victim stated she took medication and that she was taking it on the day of the robbery. On cross-examination, the victim indicated that if she does not take her medication over a period of time she gets confused, is forgetful, and can hear voices.

Appellant argues the court erred by not allowing him to question the victim regarding her diagnosis of schizophrenia and the names of her medications.

██ ██ The right to a meaningful cross-examination of an adverse witness is included in the defendant's Sixth Amendment right to confront his accusers. *State v. Saltz*, 346 S.C. 114, 551 S.E.2d 240 (2001). This does not mean, however, that trial courts conducting criminal trials lose their usual discretion to limit the scope of cross-examination. *Id.* On the contrary, trial courts retain wide latitude, insofar as the Confrontation Clause is concerned, to impose reasonable limits on such cross-examination based on concerns about, among other things, prejudice, confusion of the issues, or interrogation that is only marginally relevant. *Id.*

The court's limitation on the cross-examination of the victim was reasonable. Because the victim was taking her medication at the time of the robbery and at the time of the trial, her schizophrenia diagnosis and the types of medications she was taking were irrelevant to her ability to truthfully recall the events. Further, appellant has not shown why the specific information was needed or any nexus between the medications the victim was taking and any alleged misidentification of appellant.

In any event, the victim testified she takes medication and what happens if she does not take her medication. The jury was made aware that the victim is required to be medicated and that if she does not take her medication she is confused, forgetful, and can hear voices. Although appellant could not elicit testimony about the victim's specific mental illness and her specific medication, the gist of what appellant wished to elicit from her testimony was elicited. Therefore, appellant has not shown he was unfairly prejudiced by the limitation. *Cf. State v. Mizzell*, 349 S.C. 326, 563 S.E.2d 315 (2002) (if the defendant establishes he was unfairly prejudiced by the limitation on cross-examination, it is reversible error). The court did not abuse its discretion by limiting the victim's cross-examination.

## CONCLUSION

We find the photo line-up in this case was not unduly suggestive and, even assuming the line-up was suggestive, we find the victim's identification of appellant to be reliable. We further find the trial court did not abuse its discretion by submitting his written charge to the jury. Finally, we find the trial court did not abuse its discretion by limiting appellant's cross-examination of the victim. Accordingly, the decision of the trial court is **AFFIRMED.**

TOAL, C.J., WALLER, BURNETT and PLEICONES, JJ., concur.