THIS
 OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS
 PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
 The State, Respondent,
 v.
 Darian K.
 Robinson, Appellant.
 
 
 

Appeal From Greenville County
John C. Few, Circuit Court Judge
Unpublished Opinion No. 2010-UP-356
Submitted June 1, 2010  Filed July 12,
 2010
AFFIRMED

 
 
 
 Deputy Chief Appellate Defender for Capital Appeals Robert M.
 Dudek, of Columbia, for Appellant.
 Attorney General Henry Dargan McMaster, Chief Deputy Attorney
 General John W. McIntosh, Assistant Deputy Attorney General Donald J. Zelenka,
 Senior Assistant Attorney General William Edgar Salter, III, Office of the
 Attorney General, of Columbia; Solicitor Robert M. Ariail, of Greenville, for Respondent.
 
 
 

PER
 CURIAM:    Appellant, Darian K. Robinson, was convicted of murder and possession of a weapon during the
 commission of a violent crime and was sentenced to life without parole. 
 Robinson appeals, asserting the trial judge denied him his right to
 confrontation by ruling certain evidence relevant to his defense was
 inadmissible until such time as Appellant established all four elements of
 self-defense, resulting in shifting the burden to Appellant and denying him the
 right to confront the State's witnesses during the State's case-in-chief.  We
 affirm.[1]
FACTUAL/PROCEDURAL
 BACKGROUND
This
 case involves the shooting death of William Godwin (Victim) on January 26,
 2005.  Latrice Atkinson, Appellant's live-in girlfriend and the cousin of
 Victim, testified that in the early hours of the morning before the shooting,
 she and Appellant argued, at which time Appellant hit Latrice in her face. 
 Later in the morning, one of Latrice's relatives asked her what was wrong with
 her eye.  Latrice then observed a mark under her eye.  When the relative
 pointed the injury out to Keith Williams, the father of Latrice's children,
 Keith questioned Latrice about what happened.  Latrice told him what occurred
 but indicated Keith should not be concerned because she intended to take care
 of the matter.  Keith learned from one of their children that the incident took
 place in front of the children, but Latrice insisted she would handle the
 problem by speaking to Appellant's father.  Her injuries consisted of a small
 bruise under her eye and a swollen lip.  
Sammy
 Groves testified that on January 26, he came into contact with Appellant
 outside the Boulder Creek apartment where Appellant lived with Latrice.  At
 that time, Appellant told Sammy that he had been fighting with Latrice and that
 he had "smacked" her, resulting in both Keith and Victim confronting Appellant
 about the matter.  Appellant was concerned about the situation with Victim and
 Keith.  Sammy advised Appellant he should "fight," and Appellant
 responded that he had a .38 caliber gun.
Around
 11:30 that night, as Sammy and Appellant were still outside talking, Latrice
 arrived at her apartment with Latrice's mother, Paulette Edens, and Latrice's
 two children.  As they approached, they saw Appellant standing in front of the
 door talking to Sammy.  Appellant began asking Latrice why she was "telling
 these lies," and then told her, "You're people ain't going to be
 rolling up on me, sitting in the parking lot like they going to do something to
 me."  Appellant further stated, "They don't know who I am" and
 referred to why others "call him 187."[2] 
 Appellant was telling Latrice that her family and her children's father were
 not going to be "coming at him" and threatening him.  Sammy testified
 Appellant told Latrice she needed to stop sending her people at him, or he
 would "lay them down."  After putting her children to bed in her
 apartment, Latrice went two doors over to her mother's apartment for their
 customary time of drinking coffee.
Victim,
 who often joined his cousin and aunt in drinking coffee, then arrived at the
 building and asked Appellant and Sammy where Latrice was.  Sammy told Victim
 she was at her mother's apartment.  Victim went inside Paulette's home, came
 back out shortly thereafter, drove off for a short period of time, and then
 returned to Paulette's apartment.  During Victim's departure, Sammy went to his
 girlfriend's apartment to retrieve his phone for Appellant to use.  When Sammy
 returned, they went inside Latrice and Appellant's apartment and Appellant used
 the phone to make two calls, one of which was to ask for a ride.  Thereafter, "some
 guys" arrived at the apartment looking "amped up, like [there] was
 about to be a fight."  Appellant then walked past the group of people to
 Paulette's door.  As he passed by, he told the group, "ain't no use in y'all
 catching a misdemeanor."  Sammy then heard gunshots coming from Paulette's
 apartment.  When Appellant stepped out of the apartment, he had a gun down by
 his side. 
Latrice
 testified she, Victim, and her mother were in her mother's kitchen when they
 heard a knock on the door.  Latrice opened the door and let Appellant into the
 home.  Appellant followed behind Latrice as she walked to the kitchen, and he
 continued to confront Latrice about telling lies and her family threatening
 him.  Latrice indicated to Appellant that she did not know to what he was
 referring.  When he would not explain, Latrice told Appellant she was not going
 to keep asking, and she joined her mother and Victim sitting at the kitchen
 table.  Appellant was upset and mad, and as he continued to talk about Latrice's
 family, Victim stood up and started walking toward Appellant. According to
 Latrice, Victim had stopped walking and rested his hand against the wall. 
 Victim asked Appellant what he meant by "family" and whether he was
 referring to Victim.  Appellant then took his hands out of his pockets and
 Latrice heard two, loud firecracker sounds and then three or four more shots. 
 Victim fell to his knees and then to the ground.  Appellant turned around and
 walked out the door.
During
 cross-examination, Appellant proffered the testimony of Latrice regarding
 Victim's prior conviction.  Out of the presence of the jury, Latrice testified
 she had learned Victim had been in jail on a murder charge, but denied
 remembering having a discussion with Appellant about it.  She testified,
 however, she did remember a conversation between Victim and Appellant referring
 to "the smell of blood or hurting somebody or killing somebody that . . .
 leaves you with the memory of blood," and that both Victim and Appellant
 were nodding and agreeing with one another on the subject.  The trial judge
 found testimony of Latrice's knowledge of Victim's conviction irrelevant as it
 did not show Appellant's knowledge, but found testimony about the blood
 conversation between Appellant and Victim admissible.  Also during her
 cross-examination, Appellant sought to elicit testimony from Latrice regarding
 Latrice's sister, Jeanetta, and a man she had dated named Rocko.  When asked
 about a time Rocko "had put his hands on Jeanetta," the State
 objected and the trial judge sustained the objection to that question, as well
 as to a question concerning Appellant's presence during a confrontation between
 Victim and Rocko.  The trial judge gave Appellant the opportunity to thereafter
 proffer the testimony of Latrice regarding an incident where Victim "put
 his hands on" Rocko because Rocko had hit Jeanetta, and whether Rocko
 related the incident between him and Victim in front of Appellant.  Latrice did
 not remember the confrontation between Victim and Rocko being discussed in
 front of Appellant but did remember having a conversation with Appellant wherein
 she related to Appellant the incident that occurred between Jeanetta and Rocko. 
 The trial judge sustained the State's objection to this proffered testimony in
 part because Latrice denied knowledge of the discussion regarding the incident
 between Victim and Rocko taking place in Appellant's presence. 
The
 State also called Paulette to the stand, who testified that when Appellant
 entered her home, he came into the kitchen and stood near Latrice as the two
 bickered back and forth.  After Appellant stated, "I'm tired of y'all and
 y'all family," Victim got out of his chair and started walking and then
 stopped.  When Victim was shot, he slumped to his knees and fell forward. 
 After Appellant shot Victim, he turned around and walked out the door as if he
 had not done anything.
Victim
 was pronounced dead at the scene.  He suffered a total of three gunshot wounds,
 with a gunshot to the head being the fatal wound.  
Appellant
 took the stand in his defense.  He admitted that the night before the shooting
 he hit Latrice in her face.  According to Appellant, Victim later came to the
 apartment Appellant shared with Latrice several times that day.  On the first
 trip, Victim was upset and barged into the apartment, asking what was going on
 between his cousin and Appellant.  Victim indicated Antonia told him Latrice
 had injuries to her face.  He then warned Appellant before leaving the
 apartment that he would kill Appellant if he was still there when he
 returned.   Less than an hour later, Victim appeared again at the apartment and
 stated he had already told Appellant if he was still there and he discovered
 something was wrong with Latrice, he was going to kill Appellant.  Victim then
 walked away, slamming the apartment door.  About one hour later, Victim
 returned to the apartment a third time, "bammin' on the door."  This
 time Appellant did not open the door, but went to an upstairs window and
 indicated to Victim he did not want any trouble.  Victim continued to knock on
 the door a few minutes and then left.  Victim returned a fourth time, about
 twenty to thirty minutes before Latrice came home, and again knocked on the
 door.  At this point, Appellant maintains he was scared and nervous about
 Victim's actions.  Victim stayed in the area about five minutes before he
 eventually left in his car.  As Appellant was looking out the window, he saw
 Sammy outside and yelled down to him.  Appellant then put on his jacket, which
 he knew held a gun in the pocket, and went outside to talk to Sammy in order to
 ask Sammy if he could use his phone.  Appellant explained to Sammy what had occurred
 and told him about threats made to him by Keith and Victim.    Sammy retrieved
 his phone and Appellant then made a phone call to his friend Travis, asking for
 a ride.  
Five
 to ten minutes after Appellant called Travis, Latrice and her mother arrived at
 the apartment.  At that time, Appellant asked Latrice why she kept sending her
 family there to threaten him.  Latrice acted as if she did not know what he was
 talking about.  After Latrice put her children to bed, she went over to her
 mother's apartment.  Victim then arrived and asked where Latrice was.  After
 Sammy told him she had gone to her mother's, Victim went into Paulette's
 apartment.  Appellant testified he decided to go to Paulette's because when
 Latrice first arrived she indicated she needed to talk to him and he had not
 finished discussing the situation with her family with her.  Further, because
 his ride had arrived, he wanted to lock up their apartment and needed to take
 the keys to Latrice.
Appellant
 knocked on Paulette's door and Latrice let him into the apartment.  Latrice
 walked into the kitchen, while Appellant stood between the kitchen and living
 room trying to explain to Latrice what had been happening.  Appellant told
 Latrice she needed to stop sending her family to threaten him.  Latrice acted
 as if she did not know what was going on and had not said anything to her
 family.  At some point, Victim stood up and said, "Who are you talking
 to?  Me?"  Appellant described Victim as walking toward him in a "rush"
 with his hand balled up and running toward him.  Appellant testified he was
 much smaller than Victim and did not know if Victim possessed a weapon or was
 going to try to fight him.  Appellant stated he was intimidated and feared he
 was about to be hurt.  As Victim rushed toward him, Appellant pulled his gun
 out and started shooting out of fear.  
During
 the State's presentation of evidence, the trial judge ruled various testimony
 that the defense sought to elicit on cross-examination, including that discussed
 in regard to Latrice, was inadmissible for various reasons including, but not
 limited to, his determination the evidence was irrelevant, it was relevant but
 the relevance was outweighed by other factors, and the proffered testimony
 showed the witness denied knowledge.  After the State rested, Appellant
 proffered certain testimony of his sister, Alicia, seeking to introduce
 evidence of Appellant's knowledge before the shooting that Victim had been
 convicted of murdering his stepfather.  The judge granted the State's motion in
 limine to exclude the conviction, based upon the fact that the violence
 associated with the conviction was not directed toward the Appellant and it was
 not closely connected in point of time or occasion, but noted his ruling was
 preliminary and subject to change.[3] 
 The judge further sustained the State's relevancy objection to defense counsel's
 question to Appellant's sister as to whether she knew that Keith owned or
 possessed a gun.
At
 the start of Appellant's testimony, the trial judge initially ruled evidence
 concerning Appellant's interaction with Keith on the day of the shooting,
 proffered to show Appellant's state of mind in regard to self-defense, was
 inadmissible because the evidence at that point did not support a charge of self-defense. 
 However, after hearing Appellant's testimony and further argument of counsel,
 the judge changed his mind and determined self-defense should be submitted to
 the jury.  The judge further noted his reconsideration of the matter raised a
 question of what additional evidence should be allowed.  The only evidence
 pointed out by defense counsel at this juncture was evidence of the interaction
 between Keith and Appellant, and evidence of Victim's prior conviction.  The
 trial judge thereafter ruled evidence concerning Keith's actions toward Appellant
 on that day was relevant and admissible.  He further ruled admissible evidence
 of Victim's prior conviction.
Thereafter,
 Appellant testified regarding a conversation he had with Victim in which Victim
 stated he had been to jail, and "whatever he went to jail for he used to
 taste blood."  At certain times when Victim was around Appellant, Victim
 would indicate he had committed the murder of his stepfather.  Appellant
 further testified that on the evening of January 26, 2005, before Victim made
 his first appearance at the apartment, Keith came over and asked Appellant what
 happened between him and Latrice.  Appellant stated that Keith was upset,
 wanting to know why Appellant hit Latrice in front of Keith and Latrice's
 daughter.  During this time, Appellant observed that Keith held a gun in his
 hand.  Keith indicated Antonia had been the source of his information regarding
 Latrice's injury.  When Victim later came over and said the same thing to him,
 and indicated the source of information was Antonia, Appellant began thinking
 Victim and Keith had been in contact about the matter.  This made Appellant
 scared, and he felt he needed to talk to Latrice so she could explain things to
 her family.  Appellant maintained when he decided to go to Paulette's apartment
 he did not believe he was walking into a violent situation, because he did not
 think Victim would do anything in front of his aunt, Paulette.  However,
 because he had been threatened repeatedly that day, when Victim rushed toward
 him with his hands balled up, Appellant feared for his life and he started
 shooting.  At the close of the evidence, upon the request of the defense, the
 trial judge informed the jury he took judicial notice of the fact that Victim
 had been convicted of second degree murder in North Carolina in 1989.
After
 closing arguments but prior to the court charging the jury, defense counsel
 made a motion for mistrial arguing the trial judge's initial rulings that
 excluded certain evidence relevant to his self-defense claim precluded him the
 right to confront the State's witnesses and created a shift in burden.  The
 trial judge asked counsel to point to specific instances, other than that of a
 witness concerning whether she knew Appellant had knowledge of Victim's
 conviction, where an objection was made during cross-examination resulting in
 the defense being unable to present the evidence.  Counsel asserted "Keith
 Williams and his connection," the murder conviction of Victim, Latrice's
 knowledge regarding Keith ever having a gun, and the showing of the gun to Appellant
 on the night in question had also been excluded.   The trial judge found Appellant
 had not been denied the right to confront Latrice, as she was present during
 the entire trial and Appellant could have recalled her.  The judge inquired as
 to whether Appellant would like to call Latrice and put her on the stand, but Appellant
 declined.  The trial judge charged the law of self-defense to the jury.  The
 jury ultimately returned guilty verdicts on both the murder and weapons
 possession charge.  
ISSUE
"Whether
 the court denied appellant his right to confrontation and legitimate
 cross-examination of state's witnesses about matters probative of self-defense
 where the court prohibited cross-examination of State's witnesses until such
 time as the court deemed there was evidence establishing all four elements of
 self-defense, since this ruling was procedurally unfair, and it also was burden
 shifting?"
STANDARD OF REVIEW
The
 decision to grant or deny a mistrial is within the sound discretion of the
 trial court and will not be overturned on appeal absent an abuse of discretion
 amounting to an error of law.  State v. Council, 335 S.C. 1, 12, 515
 S.E.2d 508, 514 (1999).  The power of a court to grant a mistrial ought to be
 used with the greatest caution under urgent circumstances, and for very plain
 and obvious causes stated into the record by the trial court.  State v.
 Stanley, 365 S.C. 24, 34, 615 S.E.2d 455, 460 (Ct. App. 2005).  "A
 mistrial should only be granted when 'absolutely necessary,' and a defendant
 must show both error and resulting prejudice in order to be entitled to a
 mistrial."  Id.  "The granting of a motion for a mistrial is
 an extreme measure which should be taken only where an incident is so grievous
 that prejudicial effect can be removed in no other way."  Id.[4]   
LAW/ANALYSIS
Appellant contends he was denied his right
 to confront witnesses against him when the trial judge ruled certain evidence
 relevant to his self-defense claim inadmissible, finding the evidence was not a
 legitimate area of cross-examination until all four elements of self-defense
 were established.  He asserts this ruling was burden shifting, that Appellant
 had the right to confront the witnesses during the State's case-in-chief, and
 the ruling was arbitrary and unreasonable.  We find no reversible error.
"The
 Confrontation Clause of the Sixth Amendment, which was extended to the states
 by the Fourteenth Amendment, guarantees the right of a criminal defendant to
 confront witnesses against him, and this includes the right to cross-examine
 witnesses."  State v. Holder, 382 S.C. 278, 283, 676 S.E.2d 690,
 693 (2009).

 The
 right to present a defense is not unlimited, but must bow to accommodate other
 legitimate interests in the criminal trial process.  The accused does not have
 an unfettered right to offer [evidence] that is incompetent, privileged, or
 otherwise inadmissible under standard rules of evidence.  Defendants are
 entitled to a fair opportunity to present a full and complete defense, but this
 right does not supplant the rules of evidence and all proffered evidence or
 testimony must comply with any applicable evidentiary rules prior to
 admission.   

State v. Lyles, 379 S.C. 328, 342-43, 665 S.E.2d
 201, 209 (Ct. App. 2008) (internal citations and quotation marks omitted).  Included
 in the defendant's Sixth Amendment right to confront his accusers is the right
 to a meaningful cross-examination of an adverse witness, but this does not mean
 the trial court conducting a criminal trial loses its usual discretion to limit
 the scope of cross-examination.  State v. Turner, 373 S.C. 121, 130, 644
 S.E.2d 693, 698 (2007).  Rather, "trial courts retain wide latitude,
 insofar as the Confrontation Clause is concerned, to impose reasonable limits
 on such cross-examination based on concerns about, among other things,
 prejudice, confusion of the issues, or interrogation that is only marginally
 relevant."  Id.  "[A]s to cross-examination specifically, the Confrontation
 Clause 'guarantees only an opportunity for effective cross-examination, not
 cross-examination that is effective in whatever way, and to whatever extent,
 the defense might wish.'"  State v. Stokes, 381 S.C. 390, 401-02,
 673 S.E.2d 434, 439 (2009), quoting United States v. Owens, 484 U.S.
 554, 559 (1988).  In Stokes, the court held admission of extrinsic
 evidence of a witness's prior inconsistent statement did not violate defendant's
 Sixth Amendment right of confrontation at a murder trial, even though the
 witness denied making the statement, where defendant had an opportunity to
 cross-examine the witness given that the witness appeared at trial, was
 available for cross-examination, could have been recalled after the extrinsic
 evidence was admitted, and was not restricted in any way from testifying.  Id. at 398-403, 673 S.E.2d at 438-441.
The
 only argument made by Appellant to the trial judge regarding the denial of his
 right to confront the State's witnesses and a resulting shifting of the burden
 was in his motion for mistrial.  There, the discussion of excluded evidence
 centered around the testimony of Latrice, and Appellant pointed to the
 following specific evidence as having been improperly excluded:  (1) evidence
 the witness knew Appellant had knowledge of Victim's conviction; (2) "Keith
 Williams and his connection," (3) the murder conviction of Victim, (4)
 Latrice's knowledge regarding Keith ever having a gun, and (5) the showing of
 the gun to Appellant on the night in question.  On appeal, although Appellant
 points to several rulings of the trial judge excluding evidence from Sammy,
 Latrice and Alicia in his recitation of the facts, he only specifically argues
 error in regard to the exclusion of evidence from Latrice.  Further, while Appellant
 does also mention in his summary of excluded evidence that of Sammy regarding
 whether the neighborhood was unsafe and whether it was common for people in the
 area to carry guns, these matters clearly were not raised in Appellants motion
 for mistrial.[5] 
 Thus, the only exclusion of evidence Appellant argues on appeal that is
 preserved for review involves the testimony of Latrice.[6] 
 Though Appellant now asserts error in the exclusion of testimony from Latrice
 regarding a confrontation between the boyfriend of Latrice's sister, Rocko, and
 Victim when the boyfriend hit Latrice's sister, as well as testimony from
 Latrice regarding her knowledge of Victim's prior murder charge, trial counsel
 did not specifically point to the exclusion of the evidence from Latrice
 regarding the confrontation between Rocko and Victim.  Thus, the only argument
 preserved for review is the exclusion of Latrice's testimony regarding Victim's
 prior conviction.
As
 noted by the trial judge, Latrice's knowledge of Victim's murder conviction was
 irrelevant, as it did not show Appellant's knowledge.  Accordingly, this
 evidence would not be relevant to the issue of Appellant's self-defense.  Therefore
 the trial judge did not err in excluding it.  See Rule 401, SCRE (providing
 evidence is relevant if it tends to make the existence of any fact that is of
 consequence to the determination of the action more probable or less probable
 than it would be without the evidence); State v. Stokes, 339 S.C. 154,
 159, 528 S.E.2d 430, 432 (Ct. App. 2000) (stating evidence should be excluded
 if it is calculated to arouse the sympathy or prejudice of the jury or is
 irrelevant or unnecessary to substantiate the facts).  Additionally, the trial
 judge took judicial notice of Victims prior conviction, and the jury was
 therefore apprised of that conviction. Further, evidence of Appellant's
 knowledge of Victim's prior conviction was admitted through Appellant's
 testimony.  See State v. Mercer, 381 S.C. 149, 163, 672 S.E.2d
 556, 563 (2009) (finding no prejudice from the exclusion of cumulative evidence).   
Even
 if we were to find trial counsel's general assertion of error in the exclusion
 of Latrice's testimony sufficiently preserved Appellant's argument concerning
 Latrice's proffered testimony in regard to the incident between Victim and
 Rocko, we conclude the trial judge correctly found the testimony of Latrice
 concerning the alleged incident between Victim and Rocko was inadmissible
 because Latrice testified she did not remember the confrontation between Victim
 and Rocko being discussed in front of Appellant.  The proffered testimony of
 Latrice showed only that Appellant knew of the incident occurring between Rocko
 and Jeanetta, and not that Appellant had knowledge of a confrontation between
 Rocko and Victim.  Thus, this evidence likewise would not be relevant to
 support Appellant's claim of self-defense.
Finally,
 we find no merit to Appellant's assertion that the exclusion of Latrice's
 testimony in the State's case-in-chief violated her right to confrontation.  See  Turner, 373 S.C. at 130, 644 S.E.2d at 698 (holding the trial courts
 retain wide latitude, insofar as the Confrontation Clause is concerned, to
 impose reasonable limits on such cross-examination based on concerns about,
 among other things, prejudice, confusion of the issues, or interrogation that
 is only marginally relevant); Stokes, 381 S.C. at 401-02, 673 S.E.2d at
 439 (holding as to cross-examination specifically, the Confrontation Clause
 guarantees only an opportunity for effective cross-examination, not
 cross-examination that is effective in whatever way, and to whatever extent,
 the defense might wish).  Even if the excluded matters complained of by Appellant
 were relevant such that admission would have been proper during
 cross-examination, Appellant either elicited the evidence through other means
 or was given the opportunity to present the evidence when the trial judge
 changed his ruling and determined self-defense would be submitted to the jury. 
 Before Appellant had concluded the presentation of evidence, the trial judge
 specifically asked what additional evidence the defense would like to present
 based upon this reconsideration of self-defense, and counsel only pointed to
 the incident between Keith and Appellant on the day of the shooting and
 evidence concerning Victim's prior conviction.  The trial judge ruled both of
 these admissible, and Appellant then presented evidence on both.  As noted by
 the trial judge in his ruling on Appellant's motion for mistrial, Latrice
 remained present throughout the trial and was available for Appellant to
 recall, but he failed to take advantage of that opportunity.  Appellant cites
 no law in support of his proposition that he was entitled to present this
 evidence on cross-examination during the State's case-in-chief such that any
 opportunity to subsequently recall the State's witness would be ineffective and
 he was thereby denied his Sixth Amendment right of confronting witnesses
 against him.  See Stokes, 381 S.C. at 398-403, 673 S.E.2d at
 438-441 (wherein the court held admission of extrinsic evidence of a witness's
 prior inconsistent statement did not violate defendant's Sixth Amendment right
 of confrontation at a murder trial, even though the witness denied making the
 statement, where defendant had an opportunity to cross-examine the witness
 given that the witness appeared at trial, was available for cross-examination, could
 have been recalled after the extrinsic evidence was admitted, and was not
 restricted in any way from testifying).  Further, we are persuaded beyond a
 reasonable doubt that, even if any violation of the Confrontation Clause occurred,
 it was so insignificant that it did not affect the verdict and further find
 that Appellant has failed to show he was unfairly prejudiced by any limitation
 on cross-examination of Latrice.  See Turner, 373 S.C. at 131,
 644 S.E.2d at 698 (noting it is reversible error if the defendant establishes
 he was unfairly prejudiced by the limitation on cross-examination, and finding
 no reversible error where the gist of the evidence Appellant desired was elicited
 through other testimony); State v. Whaley, 290 S.C. 463, 465, 351 S.E.2d
 340, 341 (1986) (recognizing a criminal defendant is entitled to a fair trial,
 not a perfect one); see also Stanley, 365 S.C. at 34, 615
 S.E.2d at 460 (holding a defendant must show both error and resulting prejudice
 in order to be entitled to a mistrial).         
As
 to Appellant's assertion that the trial judge's rulings excluding evidence on
 cross-examination somehow shifted the burden to him, he makes no argument and
 cites no law in support of this proposition.  Accordingly, it is deemed
 abandoned on appeal.  See First Sav. Bank v. McLean, 314 S.C.
 361, 363, 444 S.E.2d 513, 514 (1994) (holding an issue is abandoned where the
 appellant fails to provide argument or supporting authority); Wright v.
 Craft, 372 S.C. 1, 20, 640 S.E.2d 486, 497 (Ct. App. 2006) (noting an issue
 raised on appeal but not argued in the brief is deemed abandoned and will not
 be considered by the appellate court); Mulherin-Howell v. Cobb, 362 S.C.
 588, 600, 608 S.E.2d 587, 593-94 (Ct. App. 2005) (providing when an appellant
 fails to cite any supporting authority for his position and makes conclusory
 arguments, the appellant abandons the issue on appeal).
For the foregoing reasons, we find no
 error in the trial judge's denial of Appellant's motion for a mistrial. 
 Accordingly, his convictions are
AFFIRMED.  
HUFF, SHORT, and WILLIAMS, JJ., concur.                                       

[1] We decide this case without oral argument pursuant to
 Rule 215, SCACR.
[2] A witness qualified as an expert in the area of
 street slang testified the term "187" derives from that section of
 the California Penal Code for murder, and is the term used for murder.
[3] See State v. Day, 341 S.C. 410, 419-20,
 535 S.E.2d 431, 436 (2000); State v. Amburgey, 206 S.C. 426, 429, 34
 S.E.2d 779, 780 (1945) (holding, in murder prosecution of one pleading
 self-defense against an attack by deceased, evidence of other specific instances
 of violence on deceased's part is inadmissible, unless the instances of
 violence were directed against defendant or, if directed against others, were
 so closely connected in point of time or occasion with the homicide as reasonably
 to indicate deceased's state of mind at time of the homicide, or to produce
 reasonable apprehension of great bodily harm).
[4] Although Appellant does not specifically assert
 the trial judge erred in denying his motion for mistrial, it is only in his
 motion for mistrial that he raised the issue he now argues on appeal.  We
 therefore find the proper standard of review to apply is that for a ruling on a
 motion for mistrial.
[5] It should further be noted the trial judge did not
 exclude this evidence from Sammy on the basis that Appellant had not yet shown
 the four elements of self-defense were present.  Rather, the trial judge
 sustained the objection to the unsafe neighborhood question and why people
 would carry guns finding only marginal relevance, and determined the relevance
 was outweighed by the need to focus the issues and avoid confusing the jury
 with extraneous matter.  See Rule 403, SCRE ("Although relevant,
 evidence may be excluded if its probative value is substantially outweighed by
 the danger of unfair prejudice, confusion of the issues, or misleading the
 jury, or by considerations of undue delay, waste of time, or needless
 presentation of cumulative evidence.").  As to the testimony from
 Sammy regarding whether it was common for people in that area to carry guns,
 the trial judge sustained the State's relevancy objection without comment.  The
 judge did not find that all the elements of self-defense would have to be shown
 before this evidence became admissible.
[6] Further, while Appellant mentions the exclusion of
 certain evidence from Appellant's sister, Alicia, in his recitation of relevant
 facts, he does not argue any error in the exclusion in his brief.  At any rate,
 this testimony was not from a State's witness, but from Appellant's own
 witness, and was not ruled inadmissible during cross-examination, but during
 direct.  Thus, there would be no merit to any argument that this evidence was
 wrongfully excluded cross-examination of a State's witness thereby denying
 Appellant his right of confrontation.