753 S.E.2d 247

The STATE, Respondent,

v.

Leo David LEMIRE, Appellant.

Appellate Case No. 2009–143752.
No. 5177.

Court of Appeals of South Carolina.

Heard March 28, 2012.
Decided Oct. 16, 2013.
Rehearing Denied Jan. 27, 2014.

Leland B. Greeley, of Leland B. Greeley, P.A., of Rock Hill, for Appellant.

Attorney General Alan Wilson, Chief Deputy Attorney General John W. McIntosh, Senior Assistant Deputy Attorney General Salley W. Elliott, and Assistant Attorney General Deborah R.J. Shupe, all of Columbia; and Solicitor Kevin S. Brackett, of York, for Respondent.

THOMAS, J.

Leo David Lemire appeals his convictions for second-degree lynching, conspiracy, and pointing and presenting a firearm. We affirm.

## FACTS AND PROCEDURAL HISTORY

Lemire's sister, Kerriann Larmand, owned and operated a locksmith franchise known as Pop–A–Lock, which provided roadside assistance and locksmith services to residential, commercial, and automotive customers. On April 30, 2009, Mrs. Larmand and her husband, co-defendant Francis Larmand (Larmand), became suspicious that Pop–A–Lock service calls were being intercepted, and they set up a "mystery shopper call" in an attempt to identify the culprit.[1] Lemire accompanied Larmand to the location where service was requested, but when no one responded, the two drove to the home of Ryan Lochbaum, a former Pop–A–Lock employee who was terminated for misconduct the previous October. Larmand testified that he drove to Lochbaum's house to see if Lochbaum had a Pop–A–Lock magnet on his car or if any Pop–A–Lock employees were at his house.

Upon arriving at Lochbaum's home, Larmand exited his truck, leaving Lemire inside, and found Lochbaum socializing with neighbors in the driveway. After a heated discussion with Lochbaum, Larmand began to return to his truck. Lochbaum followed Larmand until he saw that Lemire was now outside the truck and walking towards him with a large handgun. Lochbaum then attempted to disarm Lemire, and a

---

1. A "mystery shopper call" involves reporting a bogus service request to central dispatch and waiting at the location where service was requested to see if an individual other than a Pop–A–Lock employee arrives to fill the request.

struggle ensued among Lochbaum, Lemire, and Larmand. After some neighbors joined the scuffle, Lochbaum was able to wrestle away the gun. Larmand and Lemire subsequently fled the scene. The police stopped Larmand's truck later that night and arrested Lemire for pointing and presenting a firearm. Larmand was arrested the following day.

Lemire was indicted for criminal conspiracy for the purpose of committing the crime[s] of lynching and/or pointing or presenting a firearm, second-degree lynching, and pointing and presenting a firearm.[2] Larmand was charged with the same offenses, and the two were tried together.

During trial, the court charged the jury in part, "It is permissible to infer that all persons present as members of a mob when an act of violence is committed have aided and abetted the crime and are actually guilty as principals." Lemire objected, arguing the permissive inference in the charge amounted to improper burden shifting. The trial court overruled Lemire's objection.

After over an hour of deliberation, the jury sent the trial court a note asking, "If we think one is guilty of a charge, do we have to automatically vote that the other party is also guilty of the charge?" In response, the trial court responded by recharging the jury on the law of second-degree lynching, pointing and presenting a firearm, and criminal conspiracy. Approximately two and one half hours later, the jury sent a second note inquiring, "Not close on verdict ... Can we have a copy printout of the statute of the three charges?" Rather than provide a printed copy of the statutes for the respective charges, the trial court gave the jury a written copy of the entire jury charge. Lemire objected, arguing the physical copy of the charge could allow a single juror to "use the written charge to cite and to overcome what the jury has heard in their minds." The trial court overruled Lemire's objection, summoned the foreperson to the courtroom, and stated, "Madam foreperson, we have had [sic] printed out for the jury of [sic] the three charges. What I am going to do is send you back the charge that I have read." After further

---

2. Lemire was also indicted for assault with intent to kill, but the State elected not to proceed on this charge.

deliberation, the jury convicted both Lemire and Larmand of all charges. Lemire appealed.[3]

ISSUES

I. Did the trial court err in submitting its entire written charge to the jury?

II. Was Lemire entitled to directed verdicts on the charges of second-degree lynching and conspiracy?

III. Did the trial court err in charging the jurors that they could infer all persons present as members of a mob at the time the act of violence is committed are guilty as principals?

## STANDARD OF REVIEW

"In criminal cases an appellate court sits to review errors of law only." *State v. Baccus,* 367 S.C. 41, 48, 625 S.E.2d 216, 220 (2006). "An appellate court will not reverse the trial court's decision regarding jury instructions unless the trial court abused its discretion." *Clark v. Cantrell,* 339 S.C. 369, 389, 529 S.E.2d 528, 539 (2000). "An abuse of discretion occurs when the trial court's ruling is based on an error of law or, when grounded in factual conclusions, is without evidentiary support." *Id.*

## LAW/ANALYSIS

### I. Submission of the Written Charge to the Jury

On appeal, Lemire argues the trial court's decision to send the entire charge in written form to the jury during deliberation was in error because (1) the jury did not request the entire charge but only the statutes pertaining to the charges, (2) the foreperson was given only a single copy of the charge while the remaining jurors remained sequestered in the jury room, (3) the remaining jurors were neither instructed about their rights to read the instructions in their entirety nor admonished not to take portions of the charge out of context,

---

3. Larmand also appealed his convictions, and the two appeals were initially heard together by this court sitting en banc. A separate opinion was issued on Larmand's appeal. *See State v. Larmand,* 402 S.C. 184, 739 S.E.2d 898 (2013). Subsequently, the court voted to return the case to the original panel for disposition finding en banc review was improvidently granted.

and (4) there was an increased likelihood of prejudice because the written charge was provided when the jurors were struggling to reach a verdict. We disagree.

## A. *Jury Only Requested the Statutes*

"A trial court may, in its discretion, submit its instructions on the law to the jury in writing." *State v. Turner*, 373 S.C. 121, 129, 644 S.E.2d 693, 697 (2007). Furthermore, a party disputing the submission of the written charge must show prejudice to obtain relief on this ground. *Id.* A trial court should use this practice sparingly and only when it will aid the jury and not prejudice the defendant. *State v. Covert*, 382 S.C. 205, 210, 675 S.E.2d 740, 743 (2009). In any event, "[i]t is never appropriate ... to give only part of the charge to the jury." *Id.* We hold the trial court acted within its discretion in sending a written copy of the entire charge to the jury during its deliberation.

Here, pursuant to the prohibition in *Covert*, the trial court was not at liberty to provide the jury with written copies of only selected portions of its instructions.[4] The trial court could either recite the requested portions to the jury or, as was done here, send a written copy of the entire charge to the jury. At trial, Lemire never advocated that the trial court should reinstruct the jury verbally on the requested written statutes. Thus, the court did not abuse its discretion when it simply chose the other valid alternative as permitted by *Covert*. Recognizing that trial courts must exercise restraint in employing this practice, we nevertheless hold its use here was proper, especially considering the trial court had already re-charged the jurors orally on the relevant statutes when they made their first inquiry during the deliberation. *See* 75A Am.Jur.2d *Trial* § 978 (2007) (observing that a written copy of the court's charge can be provided to the jurors provided the presiding judge has first read the instructions to them).

## B. *Single Copy of the Charge Given to the Foreperson*

We further hold Lemire has failed to establish reversible error from the trial court's decisions both to supply the jury

---

4. The Supreme Court of South Carolina decided *State v. Covert*, 382 S.C. 205, 675 S.E.2d 740 (2009), on April 13, 2009, and Lemire's trial took place during October of that same year.

with only one copy of the written charge and to give that copy to the foreperson for delivery to the jury room. First, Lemire did not request the court provide a separate copy for each juror. Furthermore, we have found no authority, nor has Lemire cited authority, for the proposition that it is error for a trial court to furnish a single copy of its written instructions to the jury during deliberation.[5]

Additionally, there is no discussion in the record between the trial court and Lemire concerning the trial court's decision to summon only the foreperson to receive the written jury instructions. Because Lemire never objected at trial to the summoning of the foreperson only and never requested the entire jury be present to receive the written charge, this argument is not preserved for appellate review. *See State v. Dunbar*, 356 S.C. 138, 142, 587 S.E.2d 691, 694 (2003) ("A party may not argue one ground at trial and an alternate ground on appeal."); *see also Kennedy v. S.C. Retirement Sys.*, 349 S.C. 531, 532–33, 564 S.E.2d 322, 323 (2001) (" 'Preserving issues for appellate review is a fundamental component of appellate practice. South Carolina appellate courts do not recognize the plain error rule.' " (quoting Jean H. Toal, Shahin Vafai & Robert Muckenfuss, *Appellate Practice in South Carolina 55 (1999)))*.[6]

---

5. In the standard charges recommended by the South Carolina Supreme Court Staff Attorneys Office, the charge for giving written charges to the jury references a single copy: "I will give you a copy of these instructions in [written] ... form." The jury charges recommended by the South Carolina Supreme Court Staff Attorneys Office are available on the Charleston County Bar Association website at http://www.charlestonbar.org/CM/ArchivedNewsletters/GSInstructions 2.doc (last visited September 23, 2013). These standard charges also note the foreperson's duty to preside in the jury room and serve as the jury's spokesperson in court. *Id.* We do note, however, that these standard charges are not endorsed by the Supreme Court of South Carolina. Instead, they are simply suggestions compiled by the Supreme Court Staff Attorneys Office. A disclaimer before the list of charges reads "These jury charges are merely suggestions. They are not required and have not been sanctioned or approved by the South Carolina Supreme Court." *Id.*

6. We are aware that had all the jurors been summoned into the courtroom with instructions given to each, these matters would probably not be before us now. However, summoning all of the jurors or giving further jury instructions was not requested. To find that Lemire

 Setting aside the rules of preservation, further, we find Lemire was not prejudiced by the court furnishing the foreperson with a single copy of the charge. Lemire argues in his brief that the prejudice is "readily apparent as the record reflects that the jury sent out a note that said 'Reached a verdict on three charges, deadlocked on the remaining.' Obviously the jury has not carefully read the jury instructions or had taken some of the instructions out of context." We do not agree that the note evidences prejudice. We fail to see how the note is indicative that jury confusion was caused by the trial court's instructions. A number of explanations could exist for the wording of this note. To assume that the note is a sign of prejudice, as Lemire argues, is speculative. *See Green v. State*, 351 S.C. 184, 196, 569 S.E.2d 318, 324 (2002) (refusing to speculate what foreman meant when he related to the trial court the jury had reached a verdict "reluctantly" and holding this statement did not prove defendant was prejudiced).

## C. *Oral Instructions Concerning the Written Jury Charge*

 Lemire further contends that since a single written copy of the charge was provided to the jury during its deliberation, all the jurors should be instructed about their right to read the entire charge and be admonished not to take any portions out of context. Lemire's entire argument concerning the charge includes the following:

Your honor, the only hesitation that I have and the objection that I would make for the record is that not knowing the dynamic of the jury, and there being one copy of the charge, I would hesitate a juror or a group of jurors being able to try and use the written charge to cite and to overcome what the jury [sic] has heard in their minds. But I understand the court's position. And I would just object to the written charge as such going back to the jury ... To pick and choose and pointing different sections of the charge as opposed to other sections. If the other jurors did not

---

was somehow prejudiced due to something the foreperson or jury may or may not have done requires this court to speculate upon the happenings in the jury room. Nevertheless, guidelines and procedures as to how to submit a written charge to the jury would benefit the bench and bar in the future.

wish to read the whole charge. It's about twenty-two pages, twenty-one pages. And that's the reason that I would have, that there is the possibility that there might be some jurors who would emphasize certain sections of that and point to others and see if there's something else in the charge. And they may remember things differently.

Nowhere in his argument concerning the written jury charge did Lemire request the trial court instruct the jury in any manner. Therefore, any error predicated on the trial court's failure to instruct the jury regarding the manner in which the jury should use the written charge is not preserved for appellate review. *See State v. Ford,* 334 S.C. 444, 454, 513 S.E.2d 385, 390 (Ct.App.1999) ("When a charge is inadequate as given, a party must request further instructions or object on grounds of incompleteness to preserve the issue for review.").

▮▮▮▮ Lemire failed to establish preserved error arising from the trial court's failure to instruct the jury about the written charge. Nonetheless, we address prejudice to respond to the dissent's argument. The dissent contends error arose when the trial court did not instruct the jury to refrain from "picking and choosing" from the written charge. The dissent finds prejudice in the jury's quick deliberation, claiming this suggests that each juror did not consider the charges as a whole.[7] No other prejudice is identified by the dissent beyond speculation about the happenings within the jury room. There is a general rule against review of internal jury deliberation. *See State v. Franklin,* 341 S.C. 555, 562, 534 S.E.2d 716, 720 (Ct.App.2000). We recognize that the length of the jury's deliberation could be attributable to a variety of factors, and we decline to speculate about what occurred within the jury room.[8]

---

7. We note that Lemire never argued at trial or in his briefs that the quickness of the jury's deliberation evidenced prejudice. Instead, Lemire argued in his brief that prejudice was apparent from the jury's note stating it had reached a verdict on three charges and were deadlocked on the remaining. As previously noted, we do not agree that this note evidences prejudice.

8. We also note that the brevity of a jury's deliberation is not a ground for the reversal of a criminal conviction. *See State v. Holland,* 261 S.C. 488, 498–99, 201 S.E.2d 118, 123–24 (1973); *State v. Dewitt,* 254 S.C.

Moreover, the dissent assumes that by failing to warn the jury not to "pick and choose" from the jury charge, the jury wholly ignored the rest of the jury charge and simply convicted Lemire based on the requested charges. The dissent notes such a worry was predicated on the trial court's prior failure to recharge the jury on the hand of one is the hand of all while recharging the jury on lynching. We question the appropriateness of considering this argument in light of the fact that Lemire himself argued against the State's request for an additional hand of one is the hand of all instruction and prevailed. *See State v. Stroman*, 281 S.C. 508, 514, 316 S.E.2d 395, 399 (1984) (noting a party cannot complain of error which his own conduct induced). There is no evidence in the record indicating the jury neglected any portion of the charge. Rather, the record indicates the jury deliberated for almost an additional hour after receiving the written instructions. Further, after receiving an *Allen*[9] charge, the jury continued deliberation for another forty minutes before arriving at a verdict. In the *Allen* charge, the trial court instructed the jury to "lay aside all outside matters and reexamine the questions before you based on the law and the evidence in this case." The law and evidence in the case would include the hand of one is the hand of all charge and its limitations. Thus, were we to set aside this court's preservation rules and find error, we find no prejudice.

## D. *Prejudice Due to Lengthy Jury Deliberations*

 Finally, Lemire maintains the likelihood he would be prejudiced by the trial court's decision to give the written charge to the jury was enhanced because the jury was struggling to reach a verdict. Lemire never argued to the trial court that the likelihood of prejudice resulting from its decision concerning the jury charge would be greater due to the jury's difficulties in reaching a verdict. Thus, this argument is not preserved for review. *See Dunbar*, 356 S.C. at 142, 587

---

527, 534, 176 S.E.2d 143, 147 (1970); *State v. Chandler*, 126 S.C. 149, 154, 119 S.E. 774, 776 (1923).

9. *Allen v. United States*, 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896).

S.E.2d at 694 (noting an issue must be raised to and ruled upon by the trial court to be preserved for appellate review).

■■■ This argument also fails on the merits, as such a practice of providing the written charge to the jury has not been considered prejudicial as long as the trial court has already given the charge orally. *See Turner,* 373 S.C. at 129, 644 S.E.2d at 697 ("A trial court may, in its discretion, submit its instructions on the law to the jury in writing."); *see also* 75A Am.Jur.2d *Trial* § 978 (2007) (noting the general recognition that when a jury requests written instructions, "no good reason exists to deny such a request because giving the instructions might avoid confusion ... as to the contents of the instructions" and when a written copy of a jury charge is provided during deliberations, "the proper practice would be for a judge to first read the instructions to the panel, as opposed to just merely handing the written instructions to them"); *id.* (acknowledging "a few cases which hold that a trial court commits error if it sends its written instructions with the retiring jury" but further noting that "in this latter group of cases, the courts have ruled that such error was not of sufficient magnitude to warrant reversing a case which was otherwise properly tried"). The trial court demonstrated caution in sending the written instructions to the jury room, as evidenced in the fact that this measure was taken only when it became clear the jurors were still unable to reach a verdict despite having received additional verbal instructions and having engaged in prolonged deliberations. *See Covert,* 382 S.C. at 210, 675 S.E.2d at 743 (2009) (finding it is within the trial court's discretion to submit its instructions on the law to the jury in writing, but this practice should be used sparingly and only when it will aid the jury and not prejudice the defendant). Accordingly, we hold that providing the jury with a written copy of the jury charge did not result in prejudice to Lemire.

## II. Directed Verdicts

■■■■■ Lemire argues he was entitled to directed verdicts on the lynching and conspiracy charges. An appellate court reviews the denial of a directed verdict by viewing the evidence and all reasonable inferences in the light most favorable to the State. *State v. Weston,* 367 S.C. 279, 292, 625 S.E.2d

641, 648 (2006). "If there is any direct evidence or substantial circumstantial evidence reasonably tending to prove the guilt of the accused, [an appellate court] must find the case was properly submitted to the jury." *Id.* at 293–93, 625 S.E.2d at 648. The trial court may not consider the weight of the evidence. *Id.* at 292, 625 S.E.2d at 648.

■ At trial, however, only Lemire's co-defendant, Larmand, moved for directed verdicts on the lynching and conspiracy charges. Lemire neither requested to join in the motion nor moved for similar relief; therefore, Lemire has not preserved these arguments for review. *See State v. Ward*, 374 S.C. 606, 612, 649 S.E.2d 145, 148 (Ct.App.2007) (ruling the appellant could not bootstrap an issue for appeal through the objection made by a co-defendant) (citing *Tupper v. Dorchester Cnty.*, 326 S.C. 318, 324 n. 3, 487 S.E.2d 187, 190 n. 3 (1997)).

## III. Jury Charge on Inference

Lemire contends the trial court erred in charging the jurors that they could infer that all persons present as members of a mob when an act of violence is committed are guilty as principals. Lemire argues this instruction, which was taken directly from section 16-3-240 of the South Carolina Code (2003), unconstitutionally shifted the burden of proof, was redundant and confusing in view of other parts of the charge, and amounted to a charge on the facts. We find no error.[10]

■ Generally, the trial judge is required to charge only the current and correct law of South Carolina. *Sheppard v. State*, 357 S.C. 646, 665, 594 S.E.2d 462, 472–73 (2004); *State v. Brown*, 362 S.C. 258, 261–62, 607 S.E.2d 93, 95 (Ct.App.2004). A jury charge is correct if it contains the correct definition of the law when read as a whole. *Sheppard*, 357 S.C. at 665, 594 S.E.2d at 473. Jury instructions should be considered as a whole, and if as a whole they are free from error, any isolated portions which may be misleading do not constitute reversible error. *State v. Aleksey*, 343 S.C. 20, 27, 538 S.E.2d 248, 251 (2000). The standard for review of an

---

**10.** Section 16-3-240 was in effect at the time of the incident and at the time of Lemire's trial, but it was repealed in 2010.

ambiguous jury instruction is whether there is a reasonable likelihood that the jury applied the challenged instruction in a way that violates the Constitution. *Id.* When a charge is inadequate as given, a party must request further instructions or object on grounds of incompleteness to preserve the issue for review. *Ford,* 334 S.C. at 454, 513 S.E.2d at 390.

Lemire relies on *State v. Belcher,* 385 S.C. 597, 685 S.E.2d 802 (2009), to support his position that the charge unconstitutionally shifted the burden of proof. *Belcher,* however, concerned a permissive inference of malice, which is not an element of lynching. Furthermore, the trial court instructed the jurors they would first have to find a mob had been formed and Lemire was present as a member of the mob when the victim was attacked before they could find Lemire guilty as a principal as well as an accessory. As to Lemire's arguments that the charge was redundant, confusing, and tantamount to a charge on the facts, these concerns were neither raised to nor ruled upon by the trial court and are therefore not preserved for appeal. *See State v. McKnight,* 352 S.C. 635, 646, 576 S.E.2d 168, 173–74 (2003) (holding an argument not raised to and not ruled on by the trial court was unpreserved for appellate review). Accordingly, the trial court properly overruled Lemire's objection to the jury charge.

## CONCLUSION

We hold the trial court acted within its discretion in submitting its entire written charge to the jury when the jury requested copies of the statutes under which Lemire was charged. We further hold Lemire's argument that he was entitled to directed verdicts on the lynching and conspiracy charges are not preserved for appellate review. Additionally, the jury charge on inference was a correct interpretation of the applicable statute in effect at the time of the incident and trial. We decline to address Lemire's argument that the charge was redundant, confusing, and amounted to a charge on the facts because Lemire failed to properly raise this issue below. Based on the foregoing, the trial court's decision is

**AFFIRMED.**

WILLIAMS, J., concurs.

574

LOCKEMY, J., dissenting.

The supreme court's decision in *State v. Turner*, 373 S.C. 121, 644 S.E.2d 693 (2007), is premised on the requirement that a trial court must consider the individual circumstances of each case when determining *whether* to send a written copy of the jury charge into the jury room. 373 S.C. at 129, 644 S.E.2d at 697 (stating "submission of written instructions to the jury is not appropriate for every case"). I believe this requirement also applies to the manner in which the trial court submits a written charge. *See* 373 S.C. at 129, 644 S.E.2d at 698 (noting "this practice should be carefully exercised by the Bench"). In reviewing the trial court's decision in this case, therefore, we must determine whether the court acted within its discretion in (1) sending the written charge to the jury at all, and (2) fashioning the manner in which it did so to fit the circumstances. *Id.* I have no disagreement with the trial court's decision to send the written charge to the jury. However, I believe the trial court abused its discretion in failing to address specific concerns raised by Lemire regarding the manner in which the charge would be submitted to the jury, and on the unique facts of this case, the error caused Lemire prejudice. I would reverse and remand for a new trial.

## I. The Manner of Sending a Written Charge to the Jury

Lemire makes four arguments on appeal regarding the manner in which the trial court sent the written charge to the jury. I agree with the majority that his first argument—the court erred in sending the entire charge to the jury when it requested only a portion—is without merit. *See State v. Covert*, 382 S.C. 205, 210, 675 S.E.2d 740, 743 (2009) ("It is never appropriate ... to give only part of the charge to the jury....").

Lemire's other arguments are persuasive. First, he argues the court erred in providing the jury only one copy of the charge. Under some circumstances, providing only one copy may be sufficient. In this case, however, Lemire gave a specific reason the trial court should provide more than one copy,[11] and the circumstances made that reason compelling.

---

11. Lemire stated, "Your honor, ... the objection that I would make for the record is that not knowing the dynamic of the jury, and there being

It was 8:00 p.m. on the third day of trial. The jury had been deliberating for three and a half hours and had already been recharged once with only a portion of the charge. As Lemire pointed out to the trial court, the written charge was twenty-two pages long. Under these circumstances, there was little chance the entire jury would properly use the one copy provided to them.

Second, Lemire argues the trial court erred in not instructing the jury as to how it should properly use the written charge. Typically, trial courts charge the jury that it must consider the charge as a whole and not focus on some portions to the exclusion of others. Lemire specifically argued this concern to the trial court, explaining his objection was "if a juror was to pick and choose from the charge." Lemire's concern is particularly important under the circumstances of this case because (1) the trial court did not tell the jury this in its initial charge, (2) the jury had already been recharged orally on only a portion of the charge, (3) in that previous recharge, the trial court chose not to include the principle that the hand of one is the hand of all, which was critical to the State's theory of the case, (4) the jury asked for only selected portions of the charge, and (5) the length of prior deliberations and the hour of the night made it particularly likely the jury would "pick and choose." The concern is even greater when dealing with a written charge. In fact, the standard instructions the supreme court provides to circuit judges include this script for judges to use when distributing written instructions to the jury:

I will give you a copy of these instructions in written ... form. During your deliberations, you may refer to the instructions to guide your decision-making. You must consider the instructions as a whole and not follow some and ignore others.

In this instance, it was essential that the trial court instruct the jury it must consider the charge as a whole. First, the jury asked for "a copy printout of the statute of the three charges." This request demonstrated the danger that the jury may "pick and choose." Second, the State relied on the

---

only one copy of the charge, I would hesitate [sic] a juror or a group of jurors being able to try and use the written charge."

principle that the hand of one is the hand of all. The charge on the hand of one principle contains limitations on the jury's use of it, which include (1) "a finding of a prior arrangement, plan, or common scheme is necessary for a finding of guilt" under the principle, (2) a defendant is guilty under the principle only if the act of the other defendant "happens as a probable or natural consequence of" their plan, and (3) "mere presence at the scene of a crime is not sufficient to convict." Although the trial court's oral charge contained these limitations, the court needed to inform the jury when submitting the written instructions that it must consider these limitations in combination with the elements of lynching. If the jury did as it requested and looked only at "the three charges," Lemire would have been denied the benefit of the limitations. Under the circumstances of this case, therefore, Lemire was entitled to what he specifically asked for—to have the jury instructed it could not "pick and choose" from the charge.

Third, Lemire argues the trial court erred in presenting the written charge only to the foreperson, not to the entire jury. In some circumstances, it is permissible for the trial court to speak only to the foreperson. In my opinion, however, delivering a written copy of the jury charge is not one of those circumstances. Rather, the trial court must ensure that the entire jury knows it has received the written charge and how it may and may not use it. I do not see how that can be accomplished speaking only to the foreperson.

Therefore, I would find the trial court erred in (1) sending the jury only one copy,[12] (2) not instructing the jury to consider the charge as a whole, and (3) presenting the written charge only to the foreperson.[13]

I agree with the majority that Lemire could have been more precise in raising these issues to the trial court. However, I believe Lemire's arguments were sufficient to preserve the

---

**12.** I find this to be error because of the unique circumstances of this case, particularly the late hour and length of deliberations at the time of the jury's request. I do not mean to suggest a trial court must always submit more than one copy.

**13.** Those are the concerns raised under the circumstances of this case. In other cases, other circumstances may require the trial court to consider other options.

issues he raises on appeal. After three and a half hours of deliberations, the jury sent a note stating, "Not close on verdict," and requesting "a copy printout of the statute of the three charges." The trial court immediately announced, without giving either side an opportunity to be heard, "What I'm going to do is print the charge, bring [in] the foreperson, and just give her the charge." The assistant solicitor asked the trial court, "Your honor, can we have a moment to research? I think there may be a case, I'm not sure." The record indicates the trial court did not take any break and counsel had only a few minutes during the hearing to formulate a position on how the court should proceed.

Both defendants objected to the trial court's proposal. Lemire's counsel specifically stated:

> Your honor, the only hesitation that I have and the objection that I would make for the record is that not knowing the dynamic of the jury, and there being one copy of the charge, I would hesitate [sic] a juror or a group of jurors being able to try and use the written charge to cite and to overcome what the jury has heard in their minds. But I understand [ ] the court's position. And I would just object to the written charge as such going back to the jury.... It would have to do with certain—it would have to do if a juror was to pick and choose from the charge, I guess.... To pick and choose and pointing different sections of the charge as opposed to other sections. If the other jurors did not wish to read the whole charge. It's about twenty-two pages, twenty-one pages. And that's the reason that I would have, that there is the possibility that there might be some jurors who would emphasize certain sections of that and point to others and see if there's something else in the charge. And they may remember things differently.

*Turner* requires that a trial court fashion the manner in which it sends the jury a written copy of the charge to fit the individual circumstances of the case, 373 S.C. at 129, 644 S.E.2d at 698, yet our appellate courts have given little guidance on what that proper manner is.[14] Under these

14. A study performed in 2000 indicated that judges in South Carolina deny requests for written instructions primarily because they are uncertain about South Carolina law regarding the practice. Roger M.

circumstances, I believe Lemire adequately raised to the trial court the concerns addressed in this opinion, and thus preserved the issues he presented to this court. The trial court erred by refusing to address any of Lemire's concerns.

## II. Prejudice

In *Covert,* our supreme court cautioned the trial bench that the practice of submitting written instructions to the jury "should be used sparingly, and only where it will aid the jury and where it will not prejudice the defendant." 382 S.C. at 210, 675 S.E.2d at 743. It would be difficult to argue that the submission of written instructions did not, in some way, "aid" the jury in this case. Before the submission of the written instructions, the jury had deliberated for almost four hours on the three charges against each defendant. The jury was deadlocked to the point that when the trial court queried whether they were close to reaching a verdict or whether they would like to order dinner that would take nearly an hour to arrive, they replied, "Order dinner. Not Close on Verdict." The jury also requested a written printout of the "Statute of the Three Charges." Less than one hour after receiving one copy of the twenty-two pages of written instructions, the twelve-member jury (the record is silent as to whether they had the benefit of a hearty York County dinner to energize their efforts) received sufficient aid to unanimously reach a verdict on the three charges and become deadlocked on a new mysterious remaining charge. The trial court then gave an *Allen* charge and the jury fully completed its work within an additional forty minutes, bringing out a verdict on the three charges without comment on what happened to the other charge.

My colleagues in the majority find no error in the trial court's actions. Additionally, the majority finds that even if there was error, it was not preserved. I respectfully disagree with the majority as stated above and find that this was error

---

Young, *Using Social Science to Assess the Need for Jury Reform in South Carolina,* 52 S.C. L.Rev. 135, 179–80 (2000). While the supreme court has clarified since the study that a trial court "may, in its discretion, submit its instructions on the law to the jury in writing," *Turner,* 373 S.C. at 129, 644 S.E.2d at 697, there is still little guidance on the proper procedure for sending back a jury charge.

and it was preserved. The much more difficult question is whether the trial court's error prejudiced Lemire. *See State v. Belcher*, 385 S.C. 597, 611, 685 S.E.2d 802, 809 (2009) ("Errors, including erroneous jury instructions, are subject to harmless error analysis."). On these unique facts, I would hold that it did. The process here was somewhat confusing. The trial court's decision to provide the written instructions to the jury was based on a request from the jury for a written copy of the three specific criminal charges. Seemingly complying with that request, the trial court handed the charges to the foreperson out of the presence of the other jurors and stated, "We have printed out for the jury of (sic) the three charges." Although the trial court stated immediately thereafter, "What I am going to do is send you back the charge that I have read," the trial court does not make it clear whether it was referring to the initial charge or the re-charge the court read to the jury only two hours earlier just on the three specific criminal charges. Thus, without guidance, was the jury to take the comments from the trial court literally and only focus on the three charges, or was it free to consider all of the written instructions including those about the hand of one is the hand of all and mere presence?

Specifically as to the foreperson, what was she to do with the instructions? For example, was she to keep the written copy to herself and do as the trial court had done and read the parts she determined appropriate to the rest of the jury? Was she to pass the instructions around for every juror to read in its entirety? The quickness of the jury's decision after the submission of the instructions makes the latter choice unlikely. The foreperson was empowered with apparent authority that went beyond that which is possessed by persons in her position. It is a peril when conversations are carried on between the trial court and only one juror about non-ministerial matters.

For the foregoing reasons, I find it was error to deliver written instructions to a jury after it had engaged in long and divided discussions without guidance as to their proper use. Delivering the written instructions and making verbal comments about them to the foreperson out of the presence of the rest of the jury and without instructions as to their use empowered one juror with improper power. This empower-

ment was prejudicial to Lemire because it denied him a fair and just trial by twelve jurors hearing the same evidence and the same instructions on the law. I do not determine exactly what the jury did or focused on with the written instructions. At this point, no one knows or may ever know and I decline to speculate on their activities in the jury room. However, it is clear and not speculation that the jurors needed guidance on how to use these instructions from the trial court and not a fellow juror. Not giving this guidance to the entire jury was prejudicial to Lemire. Therefore, I respectfully dissent.