# THE STATE OF SOUTH CAROLINA
## In The Court of Appeals

The State, Respondent,

v.

Shawn Douglas Custer, Appellant.

Appellate Case No. 2019-000292

―――――――――

Appeal From Sumter County
R. Ferrell Cothran, Jr., Circuit Court Judge

―――――――――

Opinion No. 6063
Heard October 18, 2023 – Filed June 20, 2024

―――――――――

## REVERSED AND REMANDED

―――――――――

E. Charles Grose, Jr., of Grose Law Firm, of Greenwood,
for Appellant.

Attorney General Alan McCrory Wilson and Assistant
Attorney General Ambree Michele Muller, both of
Columbia, for Respondent.

―――――――――

**BROMELL HOLMES, A.J.:**  Shawn Douglas Custer appeals his conviction for
receiving stolen goods valued in excess of $10,000 and sentence of seven years'
imprisonment.  On appeal, Custer argues the trial court erred by (1) denying his
motion for a directed verdict, (2) instructing the jurors that his knowledge and
possession may be inferred because the stolen property was found on real property
under his control, and (3) failing to suppress global position system (GPS)
evidence of the stolen property's movement.  We reverse and remand for a new
trial.

## FACTUAL/PROCEDURAL BACKGROUND

An employee of High Hills Rural Water Company (High Hills) reported to work on Monday, September 21, 2015, and discovered a dump truck, backhoe, and trailer were missing from the premises. John Loney, the executive director of High Hills, tracked the dump truck with a tracking device that became activated when the vehicle started and reported the location to police. Police went to the location—Custer's property—and did not see the dump truck. When police returned to tell Loney they did not see the truck, Loney provided a printed-out map that showed the truck's location. A tracking device on the dump truck generated a report, which detailed when the truck turned on and off and its route of travel. Loney testified the report showed that early Monday morning at 12:27 a.m., the truck started and drove until 12:54 a.m.

After giving police the map with the truck's location, Loney went to Custer's property and identified the equipment. Loney stated the backhoe, which was found underneath some trees, had been separated from the truck and was covered with "brush that appeared to have been cut and put on top of the trailer." Loney acknowledged he had no evidence to connect Custer to the equipment other than the fact it was found on his property.

Officer Randall Hilliard with the Sumter County Sheriff's Office responded to High Hills regarding the stolen equipment. After Loney supplied him with a general location of the dump truck, Officer Hilliard went to the location and saw a house but did not see anyone or the equipment. Officer Hilliard returned to High Hills and asked Loney for a topographical map with an aerial view; Loney gave him a photograph with an orange dot marking the GPS tracker of the dump truck and provided Custer's address. Officer Hilliard stated that when he returned to the location and attempted to turn down the driveway, an individual was locking the gate. He told the individual what he was looking for, but "there was no further discussion." Officer Hilliard then contacted his supervisor, who decided to get a search warrant for the property. He acknowledged he found no evidence connecting the equipment to Custer.

Officer Wayne Dubose, who assisted with serving a search warrant at Custer's property, stated that when he arrived at Custer's house, he saw a closed and locked gate. Custer came down to the gate, and when the police explained they were looking for a stolen dump truck, trailer, and backhoe, Custer stated he did not know anything about the equipment. Officer Dubose recalled the police subsequently found the backhoe approximately 150 feet from the corner of Custer's residence. He stated he was able to see the backhoe from the side of the house and

the police noticed it as soon as they got out of their vehicles. Officer Dubose recalled they found the trailer and the dump truck after following matted-down grass and walking 150 yards down a trail. He stated there were limbs on the back of the trailer "camouflaging it." Officer Dubose explained there were a few dogs in the yard who barked at police when they arrived. Officer Dubose acknowledged he was only "guesstimating" the distance from the backhoe to the house. Although he could not say Custer saw the backhoe, he opined there was "no way he couldn't." He further acknowledged police took no photographs that showed the backhoe was visible from Custer's house.

Custer recalled that when law enforcement arrived, Officer Hilliard walked him to where the backhoe stood, in an area "covered by woods all around." Custer stated this was the first time he saw the backhoe, which was pulled up underneath a tree. He explained he measured the distance from his house to the backhoe and found it was eighty yards away if you walked through the trees but 120 yards away if you walked around the wood line. According to Custer, the dump truck and trailer were 322 yards from his house.

Custer owned sixty-five acres of land in Sumter County, which he bought after being honorably discharged from the Air Force. He sold a portion of the land to a friend, and by September 2015, Custer owned fifty-five acres of land that were wooded and contained multiple entrances and various paths. Custer and his wife went out of town on Saturday, September 19, 2015, to attend a wedding in Greenville. They returned to their home around 8:00 p.m. on Sunday, September 20. It was dark when they arrived home. Prior to retiring for the night, Custer brought the dogs inside the garage located underneath the house. He went to bed around 9:15 p.m. Custer woke up on Monday, September 21st between 6:45 a.m. and 6:55 a.m. He left for work by 7:45 a.m. According to Custer, he did not hear any noises during the night.

In 2016, a Sumter County grand jury indicted Custer for receiving stolen goods valued in excess of $10,000 and receiving stolen goods valued between $2,000 and $10,000.[1] In 2019, at trial, Loney admitted that while he had downloaded and printed the GPS report that showed the route the dump truck took to Custer's property in preparation for Custer's bond hearing in 2015, he was unable to find the printed report after the bond hearing. He further indicated, however, he located the

---

[1] The jury also found Custer guilty of receiving stolen goods or other property valued at more than $2,000, but less than $10,000; however, the State agreed to *nolle prosequi* this indictment prior to sentencing.

report in his office shortly before taking the stand on the day of Custer's trial while the trial court had been recessed for lunch. The report was created by a private company and had not been in the possession of the police at any time or seen by the State prior to trial.

Custer requested a mistrial, arguing the report was "extremely prejudicial" to him. He asserted he could not study the report and its accuracy, nor could he disprove what was contained in the report; Custer stated the report "could be at a minimum very, very helpful to [his] case and at a maximum could be exculpatory." The State responded a mistrial was inappropriate because it never possessed the report and the solicitor did not know it existed until the day of trial. The trial court ruled the report was admissible, finding it did not violate Rule 5 of the South Carolina Rules of Criminal Procedure.[2]

Custer moved for a directed verdict, asserting the State failed to present any evidence connecting him to the stolen equipment or showing he knowingly received goods that he believed to be stolen. He asserted the State only presented circumstantial evidence that he "should have" seen the equipment. The State responded that the offense also included possessing stolen goods, not just receiving them. The State further asserted it presented circumstantial evidence that someone drove the equipment onto Custer's property, unloaded the backhoe, and drove the dump truck to a different location, all in an area where the dogs on Custer's property would have noticed the movement and barked. The trial court denied Custer's motion for a directed verdict, finding the State presented sufficient circumstantial evidence. The trial court further found that whether or not Custer saw the backhoe in the backyard was a question of fact for the jury to decide and acknowledged this was a "close case."

Custer requested a jury charge on mere presence. The trial court stated it planned to charge constructive possession, actual possession, and mere presence. Before charging the jury, the trial court read its proposed instructions aloud to the parties and stated it intended to charge the following: "The defendant's knowledge and possession may be inferred when a, when the property is found on the property under the defendant's control." When the trial court asked if the attorneys had any issue with the instructions, Custer initially requested that the trial court charge mere presence as the final instruction prior to charging the inference instruction. He then questioned whether the trial court's charge was "the proper standard" and argued such instruction was "for a drug case" and stated "I think that's a little bit of

---

[2] The trial court did not rule on Custer's mistrial motion.

a different situation."  Custer asserted the trial court's proposed charge applied in circumstances when "[a] person charged with possession[ of drugs] argu[es the drugs were] not his, but [the drugs were found] in his car, . . . not somebody else's car with him in the car."  The trial court then pointed out, "But it[ wa]s on his property."  Custer responded that because the stolen goods were found "out on the real estate" as opposed to "being in a car," his case was different.  Custer then stated, "I'm not gonna—Judge, if you say that's what it's gonna be, that's fine."  The trial court stated, "I understand your argument, but I just don't know how to deal with it in another way because if the jury can't make the inference that it was on his property, there is no other evidence that connects him to it.  That's the only other thing that gets him there. . . .  [bec]ause they don't have anything else . . . ."  Custer replied, "Yes, sir.  I'm not gonna argue, Judge, with you. . . .  If you'll just note my, if that's just noted and let's just go from there."  The trial court again expressed it understood his issue.

After charging the jury on actual possession, constructive possession, and mere presence, the trial court issued the following instruction: "The defendant's knowledge and possession may be inferred when the stolen property is found on the property under the defendant's control."  The trial court further told the jury that this instruction was "an inference simply and not an evidentiary fact to be taken in[to] consideration by you along with all the other evidence in this case and to be given the weight that you decide it should be given."

At the conclusion of the jury instructions, Custer stated, "Judge, just so I would repeat the thing about the presence charge that comes from the drug cases."  The trial court responded, "I understand, but you asked me to charge mere presence and I charged that him having mere presence on the scene doesn't get him there."  Custer replied, "Yes, sir" and, "Thank you, Judge."

The jury found Custer guilty of receiving stolen goods or other properties valued at $10,000 or more.  The trial court sentenced him to seven years' imprisonment, suspended to time served, with probation for three years and forty hours of community service.  This appeal followed.

## STANDARD OF REVIEW

"An appellate court will not reverse the trial court's decision regarding jury instructions unless the trial court abused its discretion."  *State v. Lemire*, 406 S.C. 558, 565, 753 S.E.2d 247, 251 (Ct. App. 2013) (quoting *Clark v. Cantrell*, 339 S.C. 369, 389, 529 S.E.2d 528, 539 (2000)).  "An abuse of discretion occurs when the trial court's ruling is based on an error of law or, when grounded in factual

conclusions, is without evidentiary support." *Id.* (quoting *Clark*, 339 S.C. at 389, 529 S.E.2d at 539). "In reviewing jury charges for error, this Court considers the trial court's jury charge as a whole and in light of the evidence and issues presented at trial." *State v. Logan*, 405 S.C. 83, 90, 747 S.E.2d 444, 448 (2013).

**LAW/ANALYSIS**

Custer argues the trial court erred by instructing the jurors that his knowledge and possession of the equipment could be inferred because the stolen equipment was found on real property under his control. Custer contends that none of the State's witnesses provided evidence connecting him to the stolen equipment, other than the fact that the items were found on his land, while the State argued in closing that it "merely" had to prove the stolen items were within Custer's control on his property. He asserts the trial court's instruction negated the mere presence charge, improperly weighed the evidence, and did not allow the jurors to determine what inferences, if any, should be drawn from the equipment being recovered on his land. We agree.

As an initial matter, we hold Custer's argument is preserved for appellate review because he raised the issue to the trial court sufficiently and the trial court ruled on the issue. *See Wilder Corp. v. Wilke*, 330 S.C. 71, 76, 497 S.E.2d 731, 733 (1998) (holding an issue "must have been raised to and ruled upon by the trial judge to be preserved for appellate review"). We acknowledge Custer did not use express language such as "objection" or "I object" when he addressed the proposed instruction. However, in reviewing his exchange with the trial court, we find his statements questioning whether the inference charge was the proper standard and arguing it did not apply in this context were sufficient to convey that he was challenging the trial court's decision to give such charge. Further, by rejecting Custer's argument, the trial court ruled upon Custer's challenge to the charge. In addition, Custer asked the trial court to "note" his concerns and the trial court stated it understood his issue. Finally, after the trial court charged the jury, Custer stated he would repeat his concern "about the presence charge that comes from the drug cases." The trial court again rejected his challenge when it stated "I understand." We find the foregoing demonstrates Custer raised the issue to the trial court at the appropriate time and the trial court ruled upon the issue. We therefore hold Custer's statements to the trial court were sufficient to preserve this issue for appellate review.

Two years after Custer's conviction, in *State v. Stewart*, 433 S.C. 382, 390, 858 S.E.2d 808, 812 (2021), our supreme court found the trial court erred in charging the jury that "[t]he defendant's knowledge and possession may be inferred when a

substance is found on the property under the defendant's control." Specifically, our supreme court held that "[t]he jury charge instructing a jury it may infer knowledge or possession when a substance is found on property under the defendant's control should no longer be given." *Id*. at 391, 858 S.E.2d at 813. The court found this instruction to be improper and expressly overruled prior, contradictory caselaw on this point. *Id*. at 391, 858 S.E.2d at 813 (overruling the holding in *State v. Adams*, 291 S.C. 132, 135, 352 S.E.2d 483, 486 (1987), that "[t]he proper charge on constructive possession is to instruct the jury that the defendant's knowledge and possession may be inferred if the substance was found on premises under his control")). The instruction at issue in *Stewart* is almost identical to the instruction the trial court gave here. Pursuant to our supreme court's holding in *Stewart*, we hold the circuit court erred by instructing the jury it could infer Custer's knowledge of the stolen equipment based upon the fact that it was found on his property. *See Griffith v. Kentucky*, 479 U.S. 314, 328 (1987) ("[A] new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases . . . pending on direct review or not yet final . . . ."). Further, we hold this error prejudiced Custer when the only evidence of his guilt was the fact the stolen property was found on his land. *See Stewart*, 433 S.C. at 392, 858 S.E.2d at 813 (holding that '[t]he improper explanation of the inference of knowledge and possession permitted the jury to find [the appellant] guilty . . . without the State proving knowledge and intent"). Accordingly, we reverse and remand for a new trial in compliance with *Stewart*.

Because our determination as to this issue is dispositive of the remaining issues on appeal, we decline to address those issues. *See Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (declining to address an appellant's remaining issues when the determination of a prior issue was dispositive).

**CONCLUSION**

For the foregoing reasons, we reverse Custer's convictions and remand the case to the trial court for a new trial.

**REVERSED AND REMANDED.**

**VINSON, J., and LOCKEMY, A.J., concur.**