**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
In The Court of Appeals

The State, Respondent,

v.

Phillip Ryan Lawson, Appellant.

Appellate Case No. 2023-001190

———

Appeal From York County
William A. McKinnon, Circuit Court Judge

———

Unpublished Opinion No. 2026-UP-019
Heard November 6, 2025 – Filed January 21, 2026

———

**AFFIRMED**

———

Deputy Chief Attorney for Capital Appeals David Alexander, of Columbia, for Appellant.

Attorney General Alan McCrory Wilson and Joshua Abraham Edwards, both of Columbia; and Solicitor Kevin Scott Brackett, of York, all for Respondent.

———

**PER CURIAM:** Appellant Phillip Ryan Lawson appeals his convictions for first-degree criminal sexual conduct (CSC) with a minor, second-degree CSC with a minor, and third-degree CSC with a minor. Lawson argues the trial court erred by

issuing a jury instruction regarding witness credibility that constituted an improper charge on the facts.  We affirm.

## FACTS

Lawson was indicted in 2021 for charges related to the sexual abuse of two minors, Older Brother and Younger Brother, between the years of 2012 and 2020.

Older Brother, who was nineteen at the time of trial, testified he met Lawson's son on the school bus around sixth grade, and their families became close.  The brothers often spent the night at Lawson's house and would sleep on a mattress on the floor in Lawson's room.[1]  Older Brother testified the abuse started about a year after he met Lawson.  It began by Lawson showing the brothers his penis and explaining "how" to touch it.  It eventually progressed to oral sex; Older Brother testified "[h]e had me do it to him and then sometimes he did it to me."  He also remembered Lawson performing oral sex on Younger Brother.  Older Brother testified that Lawson asked the brothers to perform sexual acts on each other but they refused.  He claimed the abuse stopped when he was around fourteen years old after Lawson took him to the store to buy condoms and lubricant, because "I had a general idea where that was headed and . . . I just flat out told him, I don't want to do this."

Younger Brother, who was fifteen at trial, testified the abuse started when he was five or six years old.  Younger Brother went to a different school than the other children and remembered Lawson touching him and asking him to touch Lawson while they waited in the car at the bus stop for the other kids.  Younger Brother described Lawson asking him to perform oral sex "a lot," Lawson performing oral sex on him, and Lawson showering with him.  Younger Brother also testified about one occurrence of anal sex.[2]  Like Older Brother, he testified that Lawson asked the brothers to perform sexual acts on each other, but they refused.

---

[1] Lawson's wife, who passed away before trial, suffered from medical issues and slept on a mattress in the living room.

[2] A forensic interviewer who examined Younger Brother testified from her notes about Younger Brother's descriptions of oral sex and attempted anal sex.  Even though Younger Brother was twelve years old at the time of the interview, the trial court found the substance of the interview was admissible because of his cognitive deficiencies.  *See* S.C. Code Ann. § 17-23-175 (2014).

The abuse came to light in 2020 when the brothers' parents noticed changes in Younger Brother's demeanor. Younger Brother testified his dad sat him down to ask why his attitude had changed "for the worse," so he told his dad what Lawson had been doing. The parents confronted Older Brother, who was in tenth grade at the time, about whether he knew "any of this was going on." Older Brother denied knowing anything about the alleged abuse but eventually told them what had occurred. Before this point, the only person Older Brother had talked to about the abuse was Lawson's son, who did not believe him.

Lawson's daughter testified that when the brothers would sleep over, Older Brother either slept in the living room or in one of her brothers' rooms and Younger Brother slept in Lawson's room. She remembered occasions when the door to Lawson's room was locked or stuck and she described Younger Brother coming out of the room "sweaty, flushed or red" and being told it was because "they were wrestling." She testified she told her mom it made her uncomfortable that Younger Brother always slept in Lawson's room; she also told this to Lawson, who told her she was "overreacting and over-thinking it."

Lawson testified and denied the allegations. He confirmed that Younger Brother and Older Brother would sleep on mattresses in his room when they spent the night but denied anything sexual occurred, and he stated his bedroom door did not lock. Lawson also testified that he has an "obvious" mole on his groin the size of a shirt button and that he suffers from Peyronie's disease, which causes his penis to bend at a 30- to 40-degree angle when erect. Lawson did not offer any other evidence of this disease and claimed no one could corroborate it. When asked if there was anything identifying about Lawson, Older Brother described a scar across Lawson's chest, and a scar on his left leg. Younger Brother also described a scar on Lawson's chest but did not mention any other distinguishing marks.

During the charge conference, Lawson raised an objection to the trial court's "standard charge regarding credibility of witnesses and how they can be mistaken," noting the trial court "does charge that every time." Specifically, Lawson objected to the final paragraph of the trial court's standard credibility charge which stated,

> However, please keep in mind that a simple mistake does not mean a witness wasn't telling the truth as he or she remembers it. People naturally tend to forget some things or remember them inaccurately. So if a witness misstated something, you must decide whether it was because of an innocent lapse in memory or an intentional deception. The

significance of your decision may depend on whether the misstatement is about an important fact or about an unimportant detail.

Lawson argued this language was "more keen in this case because it does come down to [credibility] if they believe the two complaining witnesses or if they believe Mr. Lawson." The trial court overruled the objection and issued a credibility instruction that included the challenged language.[3]

---

[3] The full charge on credibility stated:

> Credibility and believability of the witnesses. When I say that you must consider all the evidence, I do not mean you must accept all the evidence as true or accurate. You should decide whether you believe what each witness had to say, how important that testimony was. In making those decisions, you may believe or disbelieve any witness in whole or in part. The number of witnesses testifying concerning a particular point doesn't necessarily matter.

> In deciding whether to believe a witness, I suggest you ask yourself a few questions. Did the [witness] impress you as one who is telling the truth? Did they have any particular reason not to tell the truth, or have a personal interest in the outcome of the case? Did the witness seem to have a good memory? [Did] they have the opportunity and ability to accurately observe the things they testified to? Did the witness appear to understand the questions clearly and answer them directly? If their testimony differs from other witnesses or other evidence.

> However, please keep in mind that a simple mistake does not mean a witness wasn't telling the truth as he or she remembers it. People naturally tend to forget some things or remember them inaccurately. So if a witness misstated something, you must decide whether it was because of an innocent lapse in memory or an intentional deception. The significance of your decision may depend on whether the misstatement is about an important fact or about an unimportant detail.

After deliberating for over a full day, the jury convicted Lawson of the charges related to Younger Brother[4] but acquitted him of the charges related to Older Brother.[5] The trial court sentenced Lawson to life imprisonment for first-degree CSC with a minor, twenty-years' imprisonment for second-degree CSC with a minor, and fifteen-years' imprisonment for third-degree CSC with a minor. This appeal followed.

## STANDARD OF REVIEW

"An appellate court will not reverse the trial court's decision regarding jury instructions unless the trial court abused its discretion." *State v. Custer*, 443 S.C. 172, 179, 903 S.E.2d 237, 240 (Ct. App. 2024) (quoting *State v. Lemire*, 406 S.C. 558, 565, 753 S.E.2d 247, 251 (Ct. App. 2013)). "When reviewing a jury charge for error, an appellate court considers the charge as a whole; the charge must be prejudicial to the appellant to warrant a new trial." *State v. Stukes*, 416 S.C. 493, 498, 787 S.E.2d 480, 482 (2016).

## LAW AND ANALYSIS

"Judges shall not charge juries in respect to matters of fact[] but shall declare the law." S.C. Const. art. V, § 21. "Accordingly, it is not within the province of the court to express an opinion to the jury on its view of the facts." *Stukes*, 416 S.C. at 499, 787 S.E.2d at 483. "[I]t is a general rule that a trial [court] should refrain from all comment which tends to indicate to the jury [its] opinion on the credibility of the witnesses, the weight of the evidence, or the guilt of the accused." *State v. Jackson*, 297 S.C. 523, 526, 377 S.E.2d 570, 572 (1989).

### A. Merits

Lawson argues that because this entire case "rested on the credibility of the complainants," the trial court erred by issuing a credibility charge that "bolstered the credibility of the complainants and violated the constitutional provision against the charges on the facts and the evidence." We disagree.

---

[4] One count of first-degree CSC with a minor, one count of second-degree CSC with a minor, and one count of third-degree CSC with a minor.

[5] One count of second-degree CSC with a minor, one count of third-degree CSC with a minor, and the dissemination of obscene material to a minor.

First, the trial court did not emphasize, elevate, or comment on a particular fact in its charge, nor did it instruct the jury about an inference it could make from the facts. *See, e.g.*, *State v. Brown*, 443 S.C. 196, 198–99, 904 S.E.2d 448, 449 (2024) (holding the trial court erred by instructing the jury that malice can be inferred when one kills another during the commission of a felony because it "improperly elevated and commented to the jury upon a particular fact—the commission of a felony"); *State v. Burdette*, 427 S.C. 490, 502–03, 832 S.E.2d 575, 582 (2019) (holding the trial court shall not instruct the jury that it may infer malice from the use of a deadly weapon because, in doing so, "the trial court has directly commented upon facts in evidence, elevated those facts, and emphasized them to the jury"); *State v. Grant*, 275 S.C. 404, 408, 272 S.E.2d 169, 171 (1980) (holding trial courts may not charge a jury on a defendant's flight because doing so places undue emphasis on circumstantial evidence); *State v. Cheeks*, 401 S.C. 322, 328–29, 737 S.E.2d 480, 484 (2013) ("[C]harging a jury that 'actual knowledge of the presence of a drug is strong evidence of intent to control its disposition or use' unduly emphasizes that evidence[] and deprives the jury of its prerogative both to draw inferences and to weigh evidence.").

Here, the trial court did not reference a particular fact in its charge. While Lawson takes issue with the "simple mistakes" language, the trial court did not state that the brothers—or any other witnesses—made mistakes.[6] Unlike *Brown*, *Burdette*, and *Grant*, in which the improper charges referred to *particular facts in evidence*, the charge in this case included an aphorism that "a simple mistake does not mean a witness wasn't telling the truth." Additionally, the trial court did not instruct the jury to draw a particular inference. Lawson argues the language of the charge "improperly excused" any mistakes made by the brothers. But the trial court did not instruct the jury to excuse mistakes; rather, the trial court instructed the jury that "*if* a witness misstated something," the jury had to "decide whether it was because of an innocent lapse in memory or an intentional deception." If anything, this statement simply reminded the jury of its "prerogative both to draw inferences and to weigh evidence." *Cheeks*, 401 S.C. at 328–29, 737 S.E.2d at 484.

---

[6] Nor can this court weigh the evidence to determine whether the children made mistakes. Regarding Lawson's Peyronie's disease and other alleged defining characteristics, we cannot know whether the jury believed this testimony. To claim the children were "mistaken" in failing to describe these characteristics would require us to weigh the evidence. Regarding differences or apparent discrepancies in the brothers' testimonies, each brother testified about his own instances of abuse. Describing any discrepancies as "mistakes" or "misstatements" would involve credibility determinations, which we may not make.

Second, the trial court did not express an "opinion on the credibility of the witnesses" nor the weight of their testimony. *Jackson*, 297 S.C. at 526, 377 S.E.2d at 572. Lawson notes "[c]harges concerning the believability of witnesses in child sexual abuse cases are particularly problematic because these cases almost always turn into a referendum on whether the jury believes the complaining witness." As an initial point, we agree that comments about the credibility of witnesses pose a unique risk in cases like this one, when the record contains no physical evidence and the outcome depends on whom the jury chooses to believe. *See State v. Kromah*, 401 S.C. 340, 359, 737 S.E.2d 490, 500 (2013) (holding a forensic interviewer should not have been allowed to testify about a compelling finding of abuse because it was the equivalent of stating the child was telling the truth); *State v. Jennings*, 394 S.C. 473, 480, 716 S.E.2d 91, 94 (2011) ("For an expert to comment on the veracity of a child's accusations of sexual abuse is improper."). However, we cannot construe a charge that neither singles out a particular witness (or category of witnesses) nor references individual credibility as an opinion on the credibility of the witnesses or as a comment on the weight of their testimony.

In *State v. Stukes*, 416 S.C. 493, 787 S.E.2d 480 (2016), our supreme court held the trial court improperly commented on the facts of the case when it instructed the jury on section 16-3-657 of the South Carolina Code (2015), which provides that "[t]he testimony of the victim need not be corroborated in prosecutions [for criminal sexual conduct]." The court explained,

> By addressing the veracity of a *victim's* testimony in its instructions, the trial court emphasizes the weight of *that* evidence in the eyes of the jury. The charge invites the jury to believe the *victim*, explaining that to confirm the authenticity of her statement, the jury need only hear her speak. Moreover, it is inescapable that this charge confused the jury. Specifying this qualification applies to *one witness* creates the inference the same is not true for the others.

*Stukes*, 416 S.C. at 499–500, 787 S.E.2d at 483 (emphases added). This reasoning highlights what the charge in the present case did *not* do: comment on the weight of the brothers' testimony compared to Lawson's testimony. Unlike the challenged language of the charge in *Stukes* that expressly applied only to the victim and the forensic interviewers' comments in *Kromah* and *Jennings* that vouched specifically for the children's credibility, the charge in this case applies to all witnesses and does

not reflect an opinion on the credibility of a particular witness or the weight of their testimony.

Further, when considering the credibility charge as a whole, we find it unlikely that the jury applied the instruction to only the brothers' testimony because the credibility charge clearly applied to all witnesses.  The trial court instructed the jury to "consider all the evidence" and to "decide whether you believe what *each witness* had to say." (emphasis added).  It further charged, "In making those decisions, you may believe or disbelieve *any* witness in whole or in part." (emphasis added).  While Lawson argues the jury must have relied on this charge to excuse "simple mistakes" in the brothers' testimony, we are not convinced that a reasonable juror would have interpreted this language as an opinion on only their credibility but not Lawson's.

In sum, we hold the charge was not erroneous because the trial court did not put its finger on the scale by issuing the charge; the trial court did not elevate, emphasize, or comment on a particular fact in evidence or lack thereof, nor did it express an opinion on the credibility of witnesses or weight of the evidence.  *See Brown*, 443 S.C. at 198–99, 904 S.E.2d at 449; *Jackson*, 297 S.C. at 526, 377 S.E.2d at 572.

## B. Prejudice

Even if the credibility charge was erroneous, we hold it did not prejudice Lawson.  *See Stukes*, 416 S.C. at 498, 787 S.E.2d at 482 ("When reviewing a jury charge for error . . . the charge must be prejudicial to the appellant to warrant a new trial.").  Lawson argues that "but for the improper charge, Lawson would have been acquitted of the charges about Younger Brother just as he was acquitted of the charges about Older Brother."  We disagree.

When conducting a prejudice—or harmless error—analysis, this court must consider "whether the erroneous charge contributed to the verdict rendered."  *State v. Brown*, 438 S.C. 146, 151, 881 S.E.2d 771, 773 (Ct. App. 2022) (quoting *State v. Kerr*, 330 S.C. 132, 145, 498 S.E.2d 212, 218 (Ct. App. 1998)), *aff'd in part, vacated in part*, 443 S.C. 196, 904 S.E.2d 448 (2024).

We hold the charge did not contribute to the verdict.  Lawson argues the credibility charge "inured only to the benefit of the children" because the brothers' "innocent lapses were juxtaposed against the alleged child molester's intentional deceptions."  While this may describe the jury's conclusion, the charge in and of itself does not necessitate this inference.  The language of the charge applied to

witnesses generally, not exclusively to *children* or *victims*, and we may not invade the jury's domain by ascribing the verdict to one way in which it *may* have weighed the evidence. *See State v. Herndon*, 430 S.C. 367, 373 n.6, 845 S.E.2d 499, 502 n.6 (2020) ("As an appellate court, we must be careful not to weigh the evidence. . . . Fundamental to a jury's role as fact-finder is making credibility determinations, which lie in the sole province of the jury.").

Additionally, Lawson argues the credibility charge "improperly excused any mistakes" made by Younger Brother because of his cognitive difficulties, which he asserts explains why the jury only convicted Lawson of abusing Younger Brother. We find it highly unlikely that the jury would single out the language in the charge as a comment on Younger Brother's credibility. One could similarly reason the charge led the jury to determine Older Brother's testimony included intentional deceptions, which resulted in the acquittal of charges related to Older Brother. Because the credibility charge *itself* did not encourage the jury to believe one witness over others, we must not speculate as to why the jury did so.[7] *See State v. Reyes*, 432 S.C. 394, 404, 853 S.E.2d 334, 339 (2020) ("Credibility is a determination for the jury."); *Tappeiner v. State*, 416 S.C. 239, 250, 785 S.E.2d 471, 476 (2016) (noting that, generally, the determination of a witness's credibility is "within the exclusive province of the jury" (quoting *State v. McKerley*, 397 S.C. 461, 464, 725 S.E.2d 139, 141 (Ct. App. 2012))).

Thus, we hold the credibility charge did not contribute to the verdict and therefore, did not prejudice Lawson. Stated another way, if the court did err by including the challenged language in its credibility charge, the error was harmless. *See Brown*, 438 S.C. at 151, S.E.2d at 773 ("In order to find the error harmless, we must determine beyond a reasonable doubt that the error complained of did not contribute to the verdict." (quoting *Kerr*, 330 S.C. at 144–45, 498 S.E.2d at 218)).

## CONCLUSION

For the foregoing reasons, the trial court's order is

**AFFIRMED.**

---

[7] We can infer from the verdict that the jury believed Younger Brother and not Older Brother, but we do not know why. To hold the charge was reversible error, we would have to determine this was *because* of the charge, which would require credibility determinations of our own.

**KONDUROS, GEATHERS, and VINSON, JJ., concur.**