### DAVIS v. SANDERS.

1. UNSIGNED WARRANT—ARREST.—A warrant of arrest issued by a trial justice to the sheriff of the county, with the name of the trial justice written by himself in the body of the warrant and on its back, but inadvertently omitted to be signed at the foot, is not a valid warrant, and cannot be relied on by the sheriff or his deputy as a justification for an arrest thereunder, when sued for false imprisonment.

Before HUDSON, J., Sumter, April, 1893.

Action by H. Murray Davis against Marion Sanders, sheriff, and William T. Hurst, deputy sheriff, commenced February 2, 1893, to recover damages for false imprisonment. The sheriff relied upon an unsigned warrant as his justification. The affidavit was in all respects regular, but the warrant was as stated in the opinion. It was signed by the trial justice some days afterwards.

*Messrs. Lee & Moise*, for appellant.

*Mr. R. O. Purdy*, contra.

March 5, 1894. The opinion of the court was delivered by

MR. CHIEF JUSTICE MCIVER. The plaintiff brought this action to recover damages for false imprisonment. The facts do not seem to have been disputed, and are as follows: A paper purporting to be a warrant was delivered to the defendant, Sanders, as sheriff by a trial justice, commanding him to arrest the plaintiff under a charge for resisting an officer in the execution of a warrant to enforce an agricultural lien, which paper was delivered by the sheriff to his deputy, the codefendant, Hurst, to be executed, and the plaintiff was by him arrested. But when the plaintiff was brought to the court house, it was, for the first time, discovered that the alleged warrant under which the arrest was made, was not signed by the trial justice in the usual form, nor was it dated in the attesting clause, the date not having been filled in at the place left for that purpose. As soon as this discovery was made, the sheriff released the plaintiff from arrest and he returned to his home. The paper under which the arrest was made was the usual printed blank form, of which the following is a copy, after the words which are in italics had been inserted by the trial justice in his own handwriting, to wit:

"STATE OF SOUTH CAROLINA, ⎱
  County of *Sumter.*  ⎰

By *C. C. Manning,* trial justice, in and for the said county and the said State.

To any lawful constable, *or the sheriff of said county.*

Whereas complaint upon oath has been made unto me by *I. S. Arrants,* that at *the farm of Murray Davis, in the county and State aforesaid, on the 6th and the 13th days of January, 1893, one Murray Davis and Lafayette Davis and Joshua Davis did resist I. S. Arrants, lawful constable of I. L. Parrott, a duly qualified trial justice for said county and State, in the execution of a certain warrant of attachment against the crops of said Murray Davis on his farm in said county and State, duly issued under the hand and seal of said trial justice.* These are, therefore, to command you to apprehend the said defendants and bring *them* before me, to be dealt with according to law. Given under my hand and seal the.........day of.........one thousand eight hundred and........

        Trial Justice [L. S.]''

This paper was then folded and endorsed as follows:

"The State of South Carolina, County of Sumter.

"The State vs. *Murray Davis, Lafayette Davis, Joshua Davis*. Arrest warrant.    Offence, *resisting an officer*.

C. C. *Manning*, Trial Justice.

Date *Jan. 27th, 1893.*                    Officer *Sheriff.*"

The defendants in their answer pleaded justification, relying on the paper copied above as their authority for making the arrest.

The Circuit Judge charged the jury that while it had been decided long ago (*State* v. *Vaugh*, Harp., 313,) that a warrant need not be under seal, yet it must be in writing, and signed by the officer issuing; but he instructed the jury that the warrant set up in this case, having the name of the trial justice written by himself in the body of the warrant, and in the endorsement made thereon, was a sufficient signing to make it a legal warrant, and sufficient to justify the defendants in making the arrest; and he, therefore, directed a verdict in favor of defendants.    From the judgment entered upon such verdict the plaintiff appeals upon the several grounds set out in the record, which really make the single question, whether there was error in the instruction given to the jury, that this warrant was sufficiently signed to make it a legal warrant, and justify the arrest.

There can be no doubt that the paper relied upon as a legal warrant shows upon its face that it is an incomplete paper, inasmuch as it lacks the signature of the trial justice at the foot of the paper where the signature is most usually, and we may say universally, found, and where, in this case, the printed-blank used shows it was intended to be.    Now when it is remembered that a sheriff or other officer who undertakes to arrest a citizen under a warrant, is bound to show his warrant, if demanded, to the person proposed to be arrested, and if he refuses to do so, the arrest may be lawfully resisted (*State* v. *Wimbush*, 9 S. C., 309), we think it would be very dangerous to the peace of society for the court to hold that a paper which shows on its face that it is an unfinished paper, lacking the essential element of the signature of the officer who issues it, would be a sufficient justification for an arrest.

The Circuit Judge seems to have based his view upon the fact, that as the paper in question contained, in the body of it, the name of the trial justice, as well as in the endorsement on the paper, this was a sufficient compliance with the conceded law requiring the *signature* of the officer issuing the paper. In the first place, we think that to maintain this view it would be necessary to strain the meaning of the word "signature" so far beyond its usual and ordinary signification, as would not be admissible, certainly not in a criminal, or *quasi* criminal, case. We do not think it would do to hold that a person cannot be excused for resisting an arrest under a paper purporting to be a warrant, where, upon inspection, it shows the lack of the essential element of signature, as commonly understood by that term. But, in the second place, the mere writing of one's name on a paper does not constitute such a signature as is necessary to authenticate such paper; for, as is said in 2 Greenleaf on Evidence, section 674: "A signature consists both of the *act of writing* the party's name, and of the *intention* of thereby finally authenticating the instrument." So while it was held in England, prior to the Statute of Victoria, that where the whole will was in the handwriting of the testator, his name occurring in the body of the will, as the usual exordium—"I, A B, do make," &c.—would be a sufficient signing, yet "if the testator contemplated a further signature which he never made, the will must be considered unsigned." 1 Jarm. Wills (3d Am. edit.), 115.

Now, even if this principle could with any propriety be applied to a case like this, it could not avail the defendants, for it is abundantly shown by the testimony of the trial justice himself, that when he wrote his name in the body of the warrant and in the endorsement, he did not intend that as his *signature* to the warrant, but, on the contrary, that he intended to sign the warrant in the usual place, at the foot, and was under the impression that he had done so; but when he had reached the attesting clause, in the preparation of the warrant, he was interrupted by other duties, and when he returned, being under the impression that he had signed the warrant, he folded it up, made the endorsements on it, and handed it to

the prosecutor, requesting him to deliver it to the sheriff. His language was: "I wrote out the warrant with the exception of filling out the date and signing it. When I got down to that place, the deputy came in with four or five persons to give bond. I got up to go and attend to them, wrote out their bonds, etc. I was under the impression that I had signed the warrant. I folded and wrote that on the back there, and handed the warrant to Mr. Arrants, constable of Mr. Parrott, and asked him to take it to the sheriff, and he did so."

It is due, however, to the defendants, who were acting as public officers, to say that we find nothing in the case even tending to show that they were guilty of any harsh or even rude conduct in making the arrest, or subjected the plaintiff to any ill usage after the arrest. On the contrary, they seem to have been entirely innocent of any intentional wrong. While, therefore, we would have been glad to relieve them, we cannot do so consistently with our views of the law.

The judgment of this court is, that the judgment of the Circuit Court be reversed, and that the case be remanded to that court for a new trial.