675 S.E.2d 740

**The STATE, Petitioner/Respondent,**

v.

**Kevin COVERT, Respondent/Petitioner.**

**No. 26632.**

Supreme Court of South Carolina.

Heard Jan. 21, 2009.

Decided April 13, 2009.

Attorney General Henry Dargan McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Salley W. Elliott and Senior Assistant Attorney General Norman Mark Rapoport, all of Columbia, and Robert Mills Ariail, of Greenville, for Petitioner/Respondent.

Katherine Carruth Link, of West Columbia, for Respondent/Petitioner.

Justice PLEICONES:

We granted. certiorari to review the Court of Appeals decision in *State v. Covert*, 368 S.C. 188, 628 S.E.2d 482 (Ct.App.

2006)[1] and now affirm, as modified, that court's decision to grant respondent a new trial. In a split decision, Judges Short and Anderson found reversible error in the jury's possession of a statute during deliberations; in addition, Judge Short found that evidence should have been suppressed, and Judge Anderson found reversible error in the verdict form.

■ We hold, as did Judge Short, that an unsigned search warrant is invalid, and agree with Judge Anderson that when a verdict form is submitted to a jury in a criminal case, it must affirmatively offer a "not guilty" option. Finally, while we agree with Judges Short and Anderson that it was error to permit this jury to have a written version of the trafficking statute with it during deliberations, we would not find sufficient prejudice from that error alone to warrant reversal.

## ISSUES

1) Did Judge Short err in holding that an unsigned search warrant is invalid?

2) Did Judge Anderson err in finding the verdict form here was so prejudicial as to require reversal?

3) Did permitting the jury to have a written version of the trafficking statute with it during deliberations require reversal?

## ANALYSIS

### 1. Warrant

The search warrant in this case is signed by the magistrate, and dated September 28, 2002; the accompanying two-page affidavit is signed by her on each page, and both these signatures are dated September 26, 2002. The return is signed and dated September 27, 2002. It is undisputed that the warrant was obtained and served on September 26, 2002.

At trial, respondent contended that the warrant was unsigned when it was served, that it was therefore invalid, and that accordingly the evidence seized pursuant to the search

---

1. The facts are fully reported in that opinion, and the verdict form is reproduced in Judge Anderson's concurring opinion.

should be suppressed. Respondent argued that, without the magistrate's signature, the warrant was not issued within the meaning of South Carolina's search warrant statute, S.C.Code Ann. § 17–13–140 (1985). The trial judge refused to suppress the evidence even though he found the warrant had not been signed before it was served, holding that the search warrant statute was subject to a "good faith" exception, and that such an exception was applicable here.

On appeal, Judge Short held that the search warrant was not issued within the meaning of the statute because it lacked a timely signature. Judge Short also held there was a good faith exception to the statutory warrant procedures, but that it was inapplicable here. We agree that the absence of the magistrate's signature at the time the warrant was served invalidates it, but do not reach the issue whether there exists a "good faith" exception to the statutory warrant requirements since we find, as explained below, that no warrant was ever issued.

We have held, in the context of an arrest warrant, that such a warrant is not lawful where the issuing judicial officer failed to sign the warrant on the space provided on the warrant form. *Davis v. Sanders*, 40 S.C. 507, 19 S.E. 138 (1894). Although the State would characterize such an omission as merely procedural or ministerial, we disagree. The *Davis* Court gave a persuasive explanation of the signature require-ment, albeit in the context of an arrest warrant:

> [W]hen it is remembered that a sheriff or other officer, who undertakes to arrest a citizen under a warrant, is bound to show his warrant, if demanded, to the person proposed to be arrested, and if he refuses to do so the arrest may be lawfully resisted [internal citation omitted], we think it would be very dangerous to the peace of society for the court to hold that a paper, which shows on its face that it is an unfinished paper ... would be a sufficient justification for an arrest.

The same policy considerations apply to a search warrant,[2] and thus the lack of the issuing officer's signature is not

---

2. *See* S.C.Code Ann. § 17–13–150 (2003) (copy of warrant and affidavit shall be furnished to person served)

excusable as merely procedural or ministerial, but rather negates the existence of a warrant, creating instead "an unfinished paper." As the *Davis* Court went on to hold, the fact that the issuing officer intended to sign the warrant and had in fact signed the back was not sufficient to validate it, nor was the arrest legal despite the fact the officers who executed the arrest pursuant to the "warrant" were "entirely innocent of any intentional wrong."

The *Davis* requirement that a warrant must be signed by the issuing judicial officer in order to be complete is a common law decision predicated on public policy considerations. The signature is the assurance that a judicial officer has found that law enforcement has made the requisite probable cause showing, and serves as notice to the citizen upon whom the warrant is served that it is a validly issued warrant. Without the signature, it is merely an "unfinished paper." *Davis, supra; see also DuBose v. DuBose,* 90 S.C. 87, 72 S.E. 645 (1911) ("But it has been decided [in *Davis*] that, when an officer is performing the ministerial duty of issuing a paper on compliance with certain conditions prescribed by law, his signature at the foot of the paper he intended to sign is necessary to its validity").

We consider also whether the unsigned warrant can be upheld in the face of § 17–13–140, the general search warrant statute. The statute contains requirements different from those mandated by the Fourth Amendment, and is in some ways "more strict" than the federal constitution. *State v. McKnight,* 291 S.C. 110, 352 S.E.2d 471 (1987). While we have recognized a "good faith" exception to the statute's requirements where the officers make a good faith attempt to comply with the statute's affidavit procedures, *McKnight, supra,* explaining *State v. Sachs,* 264 S.C. 541, 216 S.E.2d 501 (1975), we have left open the question whether a good faith exception would be applied where "the officers reasonably believe the warrant is valid when the search is made, but is subsequently determined to be invalid." *McKnight, supra.* Here, we do not reach the question whether there exists a good faith exception to the statute where a defective warrant is issued, since under South Carolina law an unsigned warrant is not a warrant, and is not capable of being issued within the

meaning of § 17–13–140. *See also Davis, supra* (officers good faith irrelevant where warrant is not signed).

The circuit court erred in refusing to suppress the evidence seized pursuant to the unsigned "warrant." Respondent is therefore entitled to a new trial.

## 2. *Verdict Form*

■ In this case, the jury was given a verdict form which tracked the provisions of the trafficking statute, but did not specifically allow the jury to return a "not guilty" verdict. We agree with Judge Anderson that this was error and hold that henceforth, any verdict form given to a jury for use in a criminal case must specifically include as an option "not guilty." We therefore overrule *State v. Myers*, 344 S.C. 532, 544 S.E.2d 851 (Ct.App.2001) to the extent it holds that a jury charge can negate prejudice from the lack of a "not guilty" choice on a verdict form.

## 3. *Trafficking Statute*

■ Judge Short and Judge Anderson found reversible error in the trial court's submission to the jury of the trafficking statute, while Judge Goolsby found no error. Since this case was tried and the appeal decided by the Court of Appeals, we have held that it is within the trial judge's discretion to "submit its instructions on the law to the jury in writing." *State v. Turner*, 373 S.C. 121, 644 S.E.2d 693 (2007). We caution the bench again, as we did in *Turner*, that this practice should be used sparingly, and only where it will aid the jury and where it will not prejudice the defendant. It is never appropriate, however, to give only part of the charge to the jury as was done in this case.

## CONCLUSION

The Court of Appeals decision reversing respondent's convictions and sentences is

**AFFIRMED AS MODIFIED.**

WALLER, BEATTY, JJ., and Acting Justice JAMES E. MOORE, concur.

TOAL, C.J., concurring in a separate opinion.

Chief Justice TOAL:

Although I concur in the decision to affirm the court of appeals' decision reversing Covert's conviction, I write separately because I would reach this decision on different grounds.

As a primary matter, I do not find that *Davis v. Sanders*, 40 S.C. 507, 19 S.E. 138 (1894) controls this case. *Davis* was decided over one hundred years ago, prior to the passage of § 17–13–140. Moreover, the *Davis* Court, in the absence of any statutory authority, relied on prior case law in declaring that a warrant must be signed.[3] *See State v. Vaughn*, 16 S.C.L. (Harp.) 313 (1824) (holding that a warrant that was signed but not sealed was nevertheless a valid warrant). Moreover, I find it significant that the parties in *Davis* conceded that a warrant had to be signed, thereby leaving only the issue of whether the magistrate's notation on the warrant constituted a signature for the Court's determination. Accordingly, I believe that *Davis* is somewhat irrelevant to the facts of this case and that we must solely look to § 17–13–140 to determine the validity of this warrant.

Section 17–13–140 does not specifically require the magistrate to sign the warrant, but rather, merely requires that a magistrate "issue" the warrant. Nonetheless, a magistrate's signature indicates that she has made the necessary probable cause finding required before issuing the warrant. Even assuming that an unsigned warrant is defective, I do not believe that this alone necessarily renders the warrant void *ab initio*.

This Court has held that the good faith exception to the exclusionary rule applies in cases where officers make a good faith attempt to comply with the statute's affidavit requirements. *See State v. McKnight*, 291 S.C. 110, 112–13, 352

---

3. Specifically, the *Davis* Court found that the lower court properly charged the jury that "a warrant need not be under seal, yet it must be in writing, and signed by the officer issuing." *Id.* at 509, 19 S.E. at 139.

S.E.2d 471, 472 (1987) (refusing to apply the good faith exception where the officers failed to attempt to comply in good faith to the affidavit requirements); *State v. Sachs*, 264 S.C. 541, 559, 216 S.E.2d 501, 510 (1975) (allowing evidence to be admitted pursuant to the good faith exception where officers attempted in good faith to comply with the statutory requirements). In my view, the policy reasons for applying the good faith exception to the exclusionary rule in other cases are applicable in this case. *See State v. Harvin*, 345 S.C. 190, 194, 547 S.E.2d 497, 500 (2001) (recognizing that the main purpose of the exclusionary rule is the deterrence of police misconduct). Covert does not allege that the officers knew the warrant was unsigned or deliberately obtained the warrant without a signature, and the record contains no evidence that he was prejudiced by the statutory violation. Therefore, I would hold that the officers attempted in good faith to comply with § 17–13–140's requirements and the exclusionary rule should not render the evidence inadmissible.

In my view, the fatal flaw in the State's case is its failure to present any evidence at trial that the magistrate made a probable cause finding. As the majority observes, the signature on the warrant indicates that a judicial officer found that law enforcement made the requisite probable cause showing, a finding clearly required before a warrant may be issued. The State bore the burden of proving the validity of the warrant and, in my view, while the absence of a magistrate's signature may be a factor in determining whether the warrant was issued upon probable cause, it is not dispositive of the determination. However, by failing to call the magistrate to testify that she issued the warrant upon finding probable cause, the State failed to present any evidence to show the warrant was valid and therefore did not carry its burden. *See Sachs*, 264 S.C. at 555, 216 S.E.2d at 508 (recognizing that "all that is necessary to justify the issuance of a warrant is probable cause"); *see also* U.S. Const. amend. IV and S.C. Const. art. I (mandating that a warrant must be supported by probable cause).

For these reasons, I would hold that the good faith exception is applicable under these circumstances, but that the State failed to carry its burden of proving the magistrate issued the warrant upon finding probable cause. Accordingly,

I concur with the majority's decision to affirm as modified the court of appeals' opinion.