REBECCA GRASSL BRADLEY, J. (dissenting).
¶ 76 The majority applies federal Exclusionary Rule jurisprudence in this case despite the fact that the United States Supreme Court has never addressed whether that rule applies in the context of a void ab initio warrant. We have our own Constitution in the State of Wisconsin and it provides: "The right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures shall not be violated; and no warrant shall issue but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized."[1] For nearly a century, this court deemed unauthorized warrants to be void ab initio and required any evidence recovered under such warrants to be suppressed, a rule this court reaffirmed just eight years ago.[2] Instead of applying long-standing Wisconsin law, the majority allows the admission of evidence obtained under a warrant with no basis in the law-a warrant the State concedes was void ab initio and which caused the unlawful arrest and search of a Wisconsin citizen. Notably, the invalid warrant for Christopher Kerr's arrest stemmed from an unpaid municipal citation for an ordinance violation-a civil, not a criminal offense.
*808 ¶ 77 Perhaps it is easy to acquiesce in the circuit court's infringement of constitutional rights when the defendant is found with an illegal drug in his pocket, but the majority's decision applies equally to the innocent citizens of Wisconsin who may be unlawfully arrested and searched under the guise of a warrant. An alarming example of the abuse of the judicial power to issue warrants occurred just five years ago when unelected "Reserve Judge [Barbara] Kluka authorized search warrants for the homes and offices of" citizens of Wisconsin, which "were executed ... in pre-dawn, armed, paramilitary-style raids in which bright floodlights were used to illuminate the targets' homes." State ex rel. Two Unnamed Petitioners v. Peterson, 2015 WI 85, ¶ 28, 363 Wis. 2d 1, 866 N.W.2d 165. An unelected reserve judge issued these search warrants against "citizens who were wholly innocent of any wrongdoing" and despite the absence of probable cause that any crime had been committed. Id. at ¶¶ 34 -35, 133.
¶ 78 Under the Wisconsin Constitution, statutes, and longstanding case law, the evidence in this case must be suppressed because it was obtained only as a result of an unlawful arrest warrant issued in violation of statutory procedures and Kerr's constitutional rights. A warrant issued in violation of Wis. Stat. § 800.095 is void ab initio, and any search or seizure pursuant to such a warrant violates Article I, Section 11 of the Wisconsin Constitution. I would affirm the circuit court's order suppressing the unlawfully obtained evidence.
¶ 79 Just two years ago, I cautioned against judicial approval of governmental intrusion into the home in violation of a citizen's constitutional guarantee to be free from unreasonable searches and seizures.[3] The infringement in this case is perhaps more alarming because it was accomplished by law enforcement's blameless execution of a warrant that the judge issued on his own initiative and with no legal basis whatsoever; rather, the warrant was issued in violation of procedural preconditions set forth in the Wisconsin Statutes. The majority minimizes the gravity of the judge's error by altogether ignoring it. But the danger of tolerating a breach of statutory procedures was powerfully explained by the United States Supreme Court over a century ago:
[I]llegitimate and unconstitutional practices get their first footing ... by silent approaches and slight deviations from legal modes of procedure. This can only be obviated by adhering to the rule that constitutional provisions for the security of person and property should be liberally construed. A close and literal construction deprives them of half their efficacy, and leads to gradual depreciation of the right, as if it consisted more in sound than in substance. It is the duty of the courts to be watchful for the constitutional rights of the citizen, and against any stealthy encroachments thereon.
Boyd v. United States, 116 U.S. 616, 635, 6 S.Ct. 524, 29 L.Ed. 746 (1886). The majority strengthens the foothold of an illegitimate and unconstitutional judicial practice, disregards its duty to protect the constitutional rights of Wisconsin citizens, and permits a stealthy encroachment of the right to be free from unlawful searches and seizures. I respectfully dissent.
I
¶ 80 There is no dispute that the evidence discovered by police during the *809 search of Kerr, incident to his arrest, was unlawfully obtained. Both parties agree that the warrant should not have issued because the circuit court failed to follow the statutory procedures required for issuing a valid warrant. The State argues that despite the statutory violation resulting in the unlawful search, the evidence is admissible because the Exclusionary Rule does not apply absent police misconduct, and everyone agrees the police did nothing wrong. I agree that suppression under the Exclusionary Rule is limited to instances of police misconduct and the court should not extend its application. See State v. Dearborn, 2010 WI 84, ¶ 44, 327 Wis. 2d 252, 786 N.W.2d 97. The police did not engage in any misconduct in this case; therefore, the Exclusionary Rule does not apply.
¶ 81 Nonetheless, the evidence must be suppressed under Wisconsin law because the warrant was void ab initio, making the search violative of Kerr's constitutional rights. Wisconsin case law requires suppression of evidence obtained under a warrant that was void ab initio.[4] The purpose of this rule is not to provide a remedy for the citizen whose rights were violated; the harm attendant to an unlawful arrest and search is irreparable. Rather, suppression partially restores the status quo ante: but for the issuance of the unlawful warrant, no arrest would have been made, no search would have been conducted, and no evidence would have been discovered.
II
¶ 82 In its brief, the State explicitly concedes the warrant was void ab initio: "[T]he court that issued the arrest warrant had no authority to do so, rendering the warrant void ab initio." Additionally, the State notes:
This arrest warrant, as it turns out, was void ab initio. A warrant is "void ab initio" when it was "[n]ull from the beginning, as from the first moment." Void, Black's Law Dictionary (10th ed. 2014) (including definition of "void ab initio"); see also [ State v.] Hess, 2010 WI 82, ¶ 2 n.1, 327 Wis.2d 524, 785 N.W.2d 568.[5 ]
The State, citing Justice Annette Kingsland Ziegler's concurrence in State v. Hess,[6] as well as State v. Kriegbaum,[7] State v. Loney,[8] and State v. Grawien,[9] correctly explains: "A warrant can be void ab initio when the judge or magistrate lacked legal authority to issue any warrant, or when a mandatory condition precedent to the court's authority to issue a warrant was not met from the outset."
¶ 83 Neither party disputes that the circuit court failed to comply with the provisions of Wis. Stat. § 800.095(1)(b)2., and therefore lacked any authority to issue the warrant.[10] Wisconsin law prohibits imprisoning *810 a defendant for failing to pay a fine imposed for a municipal ordinance violation unless the court finds, as pertinent here, that the defendant has the financial ability to pay the fine or failed to attend an indigency hearing to determine his ability to pay. Wis. Stat. § 800.095(1)(b)2. Accordingly, the warrant for Kerr's arrest was null from the beginning-it was void ab initio. As a result, Kerr's constitutional rights were violated and the evidence discovered should be suppressed.
¶ 84 Longstanding precedent- Kriegbaum, Loney, and Grawien-controls this case. In Kriegbaum, this court held that a warrant issued without authority violates Article I, Section 11 of the Wisconsin Constitution, which guarantees to the defendant immunity from unreasonable searches and seizures: "A search made pursuant to warrant issued by a justice of the peace to whom the legislature had not granted the power to issue such a warrant is an unreasonable search and in violation of the defendant's constitutional rights under this section of that fundamental law." 194 Wis. 229, 233, 215 N.W. 896 (1927).
¶ 85 The same principle applies in Kerr's case. The circuit court did not have authority under Wis. Stat. § 800.095 to issue the warrant because it did not make any of the four findings under subd. 2. Compliance with the statutory mandates is necessary to confer authority on the circuit court to issue the warrant.
¶ 86 The circuit court's failure to comply with the statutory procedures deprived it of any lawful authority to issue this warrant in the first place. The warrant's issuance rendered the search constitutionally unreasonable. This court in Kriegbaum, 194 Wis. at 233, 215 N.W. 896, concluded that the admission of the evidence obtained from an unlawful warrant violated Wisconsin's Constitution. This court should apply this precedent in Kerr's case and suppress the evidence.
¶ 87 Our court of appeals reached the same conclusion in Loney and Grawien. In Loney, the court of appeals held that evidence obtained as a result of an unlawfully issued warrant necessitated suppression of the evidence. 110 Wis. 2d 256, 259-60, 328 N.W.2d 872 (Ct. App. 1982). Because the court commissioner who issued the warrant lacked the authority to do so, the circuit court should have granted the defendant's motion to suppress, and the court of appeals accordingly reversed Loney's conviction. Id. at 260, 328 N.W.2d 872. In Grawien, the court of appeals likewise held that when a warrant is issued by a court commissioner who had no authority to issue it, the evidence obtained under the unlawful warrant must be suppressed. 123 Wis. 2d 428, 431-33, 367 N.W.2d 816 (Ct. App. 1985).
¶ 88 In this case, the circuit court similarly lacked legal authority to issue the warrant because it did not make any of the findings mandated by Wis. Stat. § 800.095(1)(b)2. Any evidence discovered upon execution of a warrant void ab initio must be suppressed as a violation of Kerr's right to be free from unreasonable searches and seizures under the Wisconsin Constitution.[11] See also *811 State v. Vickers, 290 Mont. 356, 964 P.2d 756, 762 (1998) (holding that a void ab initio warrant requires suppression, and "the inquiry stops and all other issues pertaining to the validity of the search warrant, such as whether the purpose of the exclusionary rule is served, are moot"); People v. Carrera, 203 Ill.2d 1, 270 Ill.Dec. 440, 783 N.E.2d 15 (2002) ; State v. Surowiecki, 184 Conn. 95, 440 A.2d 798, 799 (1981) (suppressing evidence obtained under void ab initio warrant because it was "fatally defective, invalid and void and conferred no authority to act thereunder") (quoted source omitted); State v. Nunez, 634 A.2d 1167, 1169 (R.I. 1993) (reversing conviction based on evidence obtained from void ab initio warrant); People v. Hentkowski, 154 Mich.App. 171, 397 N.W.2d 255 (1986) (per curiam) (suppressing evidence obtained from void ab initio warrant); State v. Covert, 382 S.C. 205, 675 S.E.2d 740, 742-43 (2009) (reversing conviction because evidence should have been suppressed where warrant was not signed; not reaching good faith exception because an unsigned warrant is "not a warrant" at all).
¶ 89 Justice Ziegler's distinction between void and defective warrants is unconvincing.[12] The warrant issued here is no different than the problematic warrants in Hess, Kriegbaum, Loney, and Grawien. The individual official issuing the warrant in each case lacked the statutory authority to do so. In Hess, just like this case, the circuit court judge lacked statutory authority to issue an arrest warrant. 327 Wis. 2d at 524, ¶ 23, 785 N.W.2d 568. The fact that judges generally possess authority to issue warrants does not authorize judges to issue warrants that violate statutory law or constitutional rights. That the judge in Kerr's case would have had legal authority to issue the warrant if he had complied with the statutory requisites does not alter the nature of the constitutional violation. A void ab initio warrant is not a warrant at all-it is as if the warrant never existed; therefore, the analysis stops and the evidence should be suppressed. These cases are different from situations involving a warrant that was valid when issued, but a reviewing court later declared the warrant invalid. For example, a warrant may be valid upon issuance, but subsequently become invalid because a statute is declared unconstitutional, case law is overruled, the legislature changes the law, or a reviewing court decides the warrant was not supported by probable cause. In these examples, the law or the analysis of it changed. In Kerr's situation, the judge did not follow governing law, rendering the warrant void from the beginning.[13] The judge who *812 issued Kerr's warrant lacked any legal authority to do so. Hess, Kriegbaum, Loney, and Grawien control under these facts. The evidence should be suppressed because it was obtained only as a result of an arrest warrant that was void ab initio and therefore in violation of Kerr's right to be free from unreasonable searches and seizures under the Wisconsin Constitution.
¶ 90 The Fourth Amendment, the language of which the framers of the Wisconsin Constitution adopted verbatim, was designed to protect the people from the odious English practice of issuing writs of assistance empowering revenue officers to indiscriminately search homes. Boyd, 116 U.S. at 624-25, 6 S.Ct. 524. This practice was rightly described as "the worst instrument of arbitrary power, the most destructive of English liberty, and the fundamental principles of law, that ever was found in an English law book." Id. at 625, 6 S.Ct. 524 (quoting Thomas M. Cooley, Constitutional Limitations 301-303 (1868) ). If evidence seized under an unlawful warrant may be used against a person whose constitutional rights were violated by an unreasonable search and seizure, "declaring his right to be secure against such searches and seizures, is of no value, and, so far as those thus placed are concerned, might as well be stricken from the Constitution." Weeks v. United States, 232 U.S. 383, 393, 34 S.Ct. 341, 58 L.Ed. 652 (1914).[14] While allowing Kerr to circumvent punishment for illegal drug possession may be an unpalatable outcome for the majority, "[t]he efforts of the courts and their officials to bring the guilty to punishment, praiseworthy as they are, are not to be aided by the sacrifice of those great principles established by years of endeavor and suffering which have resulted in their embodiment in the fundamental law of the land." Id.
¶ 91 I respectfully dissent.

The Honorable Robert E. Eaton of Ashland County issued the warrant (the "issuing court"), but, because the arrest occurred in Bayfield County, the Honorable John P. Anderson of Bayfield County presided over the motion to suppress and reviewed the warrant (the "reviewing court").

For an egregious example of abuse of power see State ex rel. Two Unnamed Petitioners v. Peterson, 2015 WI 85, 363 Wis. 2d 1, 866 N.W.2d 165. The facts of this case, however, are dramatically different. And regardless, given the forward-looking nature of the exclusionary rule, it is incapable of functioning as a remedy. Here it cannot, and never has. While it may be tempting to judicially create a remedy for these wrongful searches and seizures, repurposing the exclusionary rule to be a remedy, rather than a tool to deter police misconduct, will not fix the problem and will, in fact, create downstream problems of its own. In fact, it would disband the exclusionary rule in its entirety. Stated differently, it turns a forward-facing pedagogical tool backward into a purported remedy.

This total reflects a local forfeiture of $263.50, a clerk's fee of $5.00, and a warrant fee of $30.00.

But see Part III.

For the purposes of this section we assume without deciding that the issuance of the arrest warrant failed to follow the requirements of Wis. Stat. § 800.095(1)(b)2.But see Part III.

The parties, and the reviewing court, have used the term "void ab initio" rather loosely in this case.

The interpretation and application of a statute present questions of law that this court reviews de novo. See, e.g., State v. Dorsey, 2018 WI 10, ¶ 23, 379 Wis. 2d 386, 906 N.W.2d 158 (citing State v. Alger, 2015 WI 3, ¶ 21, 360 Wis. 2d 193, 858 N.W.2d 346 ). When interpreting a statute, we begin with the language of the statute, and, "[i]f the meaning of the statute is plain, we ordinarily stop the inquiry." State ex rel. Kalal v. Circuit Court for Dane Cty., 2004 WI 58, ¶ 45, 271 Wis. 2d 633, 681 N.W.2d 110. If the meaning is not plain, we look to the context in which the statute is used, "in relation to the language of surrounding or closely-related statutes," and may consult the scope and purpose of the statute where they are ascertainable from the text and structure of the statute itself. Id., ¶¶ 46, 48. Resort to legislative history and other extrinsic sources is traditionally inappropriate "in the absence of a finding of ambiguity," "although legislative history is sometimes consulted to confirm or verify a plain-meaning interpretation." Id., ¶ 51.

The statute's language does not impose any requirement to ensure that the defendant receive the notice; rather, the court need only "ensure that the information is sent to the defendant by mail." Wis. Stat. § 800.09(1g). In this regard, I note that the record indicates that the address to which the ticket, and presumably the notice of default judgment, was sent is different from the address where Kerr was arrested. This difference does not affect my analysis, however, as a court is not required to verify that the address of record is accurate and there is nothing in the record to indicate that the notices were not mailed as required or that they were returned to the court.

Kerr never made any such request to the court.

The reviewing court said: "The standard default judgment form, which was eventually used in this case, contains the information required to be provided in writing to a defendant if he or she is not in court when judgment is entered, pursuant to §§ 345.47 and 800.09(1g)."

The statute appears to place the onus on the defendant to request that hearing. See Wis. Stat. § 800.09(1g) ("[T]he defendant should notify the court if he or she is unable to pay the judgment because of poverty....").

The Fourth Amendment to the United States Constitution sets forth:
The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath of affirmation, and particularly describing the place to be searched, and the persons or things to be seized.
U.S. Const. amend. IV. Article I, Section 11 of the Wisconsin Constitution contains substantially the same language. See State v. Scull, 2015 WI 22, ¶ 18 n.3, 361 Wis. 2d 288, 862 N.W.2d 562.

The concurrence latches onto an argument not advanced by either party, concluding that "neither the plain language of the applicable statutes nor the facts of record support the conclusion that the issuing court acted wrongfully." Concurrence, ¶ 56. Even the state concedes that "the arrest order here was void ab initio." Rather than engage an argument that was not briefed or argued, I determine that the State's concession is reasonable and conclude the warrant was void ab initio.

There is a dearth of precedent distinguishing between warrants that are void ab initio and warrants that are simply defective on both the federal and state level. Justice Ziegler's concurrence in Hess is the only case identifying a notable difference between the two, but Justice Ziegler did not cite to any case law to support her proposition. See Hess, 327 Wis. 2d 524, ¶ 73, 785 N.W.2d 568 (Ziegler, J., concurring) ("While a per se void ab initio warrant is always defective, a defective warrant is not always per se void ab initio."). Justice Ziegler's concurrence in this case fares no better-it cites no cases supporting the distinction she makes here.

In her concurrence, Justice Ziegler attempts to vindicate the judge's issuance of the warrant for Kerr's arrest. The text itself categorically negates her statutory construction. Section 800.095(1)(b) 2 unambiguously declares: "No defendant may be imprisoned under subd. 1 unless the court makes one of the following findings:...." As pertinent in this case, these include finding that the defendant has the ability to pay the judgment within a reasonable time (subd. para. a.), and has failed to attend an indigency hearing (subd. para. c). It is uncontested that the requisite finding was not made; therefore, Kerr's arrest and imprisonment were unlawful.

Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961), extended the exclusionary rule established in Weeks v. United States, 232 U.S. 383, 393, 34 S.Ct. 341, 58 L.Ed. 652 (1914), to state criminal cases.